811 F.2d 1154
 Dorothy DEMPSEY, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Peabody Coal Company,
and Old Republic Insurance Company, Respondents.
 No. 86-1128.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Oct. 27, 1986.
Decided Feb. 18, 1987.
As Amended Feb. 20, 1987.
 
 T.R. Murphy, Jr., Eldorado, Ill., for petitioner.
 Mark E. Solomons, Arter & Hadden, Jeffrey J. Bernstein, U.S. Dept. of Labor-Solicitor's Office, Washington, D.C., for respondents.
 
 
 1
 Before CUMMINGS and CUDAHY, Circuit Judges, and WILL, Senior District Judge.*
 
 
 2
 WILL, Senior District Judge.
 
 
 3
 An Administrative Law Judge ("ALJ") awarded Dorothy Dempsey benefits under the Black Lung Benefits Reform Act, 30 U.S.C. Secs. 901-945 (1976, Supp. I & Supp. II 1978). The Department of Labor Benefits Review Board ("Board") reversed the ALJ's order granting benefits and remanded the case for a determination of benefits under alternative bases of entitlement. On remand the ALJ found these alternative provisions unavailing, and the Board affirmed the ALJ's decision and order. Mrs. Dempsey now appeals the Board's decision to this court. The issues presented are: (1) whether the ALJ's invocation of an interim presumption of total disability, and his finding that the Peabody Coal company did not rebut this presumption, are supported by substantial evidence; (2) whether the Board correctly held that Mrs. Dempsey was precluded, as a matter of law, from utilizing the interim presumption of total disability; and (3) whether, on remand, substantial evidence supports the ALJ's finding of ineligibility under the alternative theories of 20 C.F.R. Part 410, subpart D.
 
 I.
 
 4
 This black lung benefits claim has a lengthy and complicated history.
 
 
 5
 On February 19, 1976, Ben H. Dempsey, a coal miner for 13 years, died at age 57 of an acute myocardial infarction. At the time of death, Mr. Dempsey was employed by Peabody Coal Company as a mine examiner. Shortly after his death, Ben Dempsey's widow, Dorothy Dempsey, filed a survivor's claim for black lung benefits with the Department of Labor under the Federal Coal Mine and Safety Act of 1969, 30 U.S.C. Sec. 801 et seq. (1970). The Department of Labor informally denied the claim on July 8, 1977. Following the enactment of the Black Lung Benefits Reform Act of 1977, Mrs. Dempsey's claim was revived and reviewed under amended eligibility criteria. In an ex parte proceeding, the Department of Labor made an informal award of benefits and then informed Peabody that it might be liable for payments to Mrs. Dempsey. (Director's Exhibit 15). Peabody denied liability on the grounds that Ben Dempsey neither died due to coal mine employment related pneumoconiosis[1] nor was totally disabled by the disease at the time of his death.
 
 
 6
 A hearing on the revived claim was held before an ALJ on August 6, 1979. On October 11, 1979, the ALJ awarded benefits pursuant to 20 C.F.R. Sec. 727.203(a)(5) (hereinafter Dempsey I ). Peabody appealed to the Board, and following the submission of briefs by the parties, the Board, on June 11, 1981, reversed and remanded the claim to the ALJ for consideration of the evidence under 20 C.F.R. Part 410. In a decision and order dated January 27, 1982 (hereinafter Dempsey II ), the ALJ denied benefits under 20 C.F.R. Part 410 on the grounds that Mrs. Dempsey had failed to prove that her husband either had black lung disease, was totally disabled by it, or died due to this condition.
 
 
 7
 Mrs. Dempsey requested reconsideration of the ALJ's January 27, 1982 decision and order in Dempsey II. On March 31, 1982, the ALJ denied the motion for reconsideration. Mrs. Dempsey then filed a second appeal to the Board arguing that the ALJ's denial of the claim under 20 C.F.R. Part 410 was not supported by substantial evidence. Mrs. Dempsey also argued that in reversing the ALJ in Dempsey I, the Board exceeded the scope of its authority by making findings of fact de novo.
 
 
 8
 In November 29, 1985, the Board affirmed the denial of benefits. The Board held that the finding of ineligibility under the alternative theories of 20 C.F.R. Part 410 was supported by substantial evidence and that Mrs. Dempsey's further challenges were without merit.
 
 
 9
 Mrs. Dempsey now petitions this court challenging both the Board's decision reversing the ALJ's grant of benefits in Dempsey I and the ALJ's denial of benefits in Dempsey II.
 
 II.
 
 10
 On February 18, 1976, Ben Dempsey went to work at his regular job as a coal mine examiner. He worked from 4 p.m. to 11 p.m. that day. Later that night, after suffering chest pains and shortness of breath, Dempsey drove himself to the hospital. He was admitted during the early morning of February 19, and at 9:40 p.m. that same day, Dempsey died due to cardiopulmonary arrest and acute inferior myocardial infarction.
 
 
 11
 The documentary medical evidence in this case is scant. To begin with, the record contains no medical test evidence other than a July 29, 1975 chest X-ray which was found to contain no evidence of pneumoconiosis or any other lung disease. The only remaining medical evidence is that which was accumulated on February 19, 1976, the day of Dempsey's death. The hospital record reveals Dempsey's rapid deterioration on that day, but makes no mention of any lung disease. However, on a discharge summary completed after Dempsey's death, Dr. E. Partridge, the attending physician, gave as his final diagnosis: "cardiopulmonary arrest secondary to acute pulmonary edema, secondly to acute interior myocardial infarction. Secondary causes interstitial opacities, pulmonary emphysema." (Director's Exhibit 10). The death certificate again noted interstitial opacities and pulmonary emphysema as secondary factors in Mr. Dempsey's death. (Director's Exhibit 6).
 
 
 12
 Approximately 19 months after Mr. Dempsey's death, Dr. Partridge wrote a letter to Mrs. Dempsey in which he stated that Ben Dempsey suffered from pulmonary emphysema, as manifested "by exertional dyspnea and chronic coughing." At the conclusion of the letter, Dr. Partridge stated: "It is therefore my medical opinion that Mr. Dempsey's interstitial fibrosis and emphysema are secondary to occupational exposure, pertaining to his underground mine working." (Petitioner's App. A-3).
 
 
 13
 Peabody Coal submitted all of Dempsey's medical records to the review of Dr. Daniel Potts, a pulmonary disease specialist. On March 3, 1979, Dr. Potts reported (1) that the records showed "no objective evidence of pre-existing lung disease," (2) that neither the X-ray reports nor anything else supported Dr. Partridge's notation of interstitial fibrosis or emphysema, and (3) that "there is no medical evidence provided to suggest a pulmonary condition that was caused or aggravated by coal mine employment." In conclusion, Dr. Potts noted that "I would seriously doubt if Dr. Partridge will be able to provide evidence to support his diagnosis of interstitial fibrosis." (Director's Exhibit 16).
 
 
 14
 Finally, the record includes no autopsy report, nor any ventilatory, arterial blood gas studies, or other breathing tests generally used to determine the existence of disabling respiratory impairments.
 
 III.
 
 15
 The federal black lung program was established by Title IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. Sec. 801 et seq. (1970). This Act provides benefits to disabled miners and to the families of deceased minors. Since its passage, Congress has substantially amended the Act twice, first by the Black Lung Benefits Act of 1972, Pub.L. No. 92-303, 86 Stat. 150, and more recently by the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95-239, 92 Stat. 95 (codified as amended at 30 U.S.C. Sec. 901 et seq. (1977)). The congressional intent behind the 1977 reform legislation was to expand the Act's coverage by liberalizing the eligibility criteria. See Underhill v. Peabody Coal Co., 687 F.2d 217, 220 (7th Cir.1982). Under the amended Section 402(f)(2) of the Act, 30 U.S.C. Sec. 902(f)(2), the Secretary of Labor was authorized to adopt new medical and evidentiary criteria for determining total disability or death due to pneumoconiosis. Pursuant to this provision, the Secretary of Labor issued 20 C.F.R. Sec. 727.200 et seq. (1980). That regulation reads in pertinent part:
 
 
 16
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... arising out of that employment, if one of the following medical requirements is met:
 
 
 17
 (1) A chest ... X-ray ... establishes the existence of pneumoconiosis ...;
 
 
 18
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease ...[;]
 
 
 19
 (3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood ...[;]
 
 
 20
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment ...;
 
 
 21
 (5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition demonstrates the presence of a totally disabling respiratory or pulmonary impairment. (Emphasis added).
 
 
 22
 (b) Rebuttal of interim presumption. In adjudicating a claim under this sub-part, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 23
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ...; or
 
 
 24
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or
 
 
 25
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 26
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 27
 20 C.F.R. Sec. 727.203(a)(1)-(a)(5), (b)(1)-(b)(4).
 
 
 28
 In applying this regulation, the ALJ initially decides whether the medical evidence is sufficient to invoke the interim presumption of "total disability" due to pneumoconiosis, and whether the entirety of the evidence rebuts the presumption. Amax Coal Co. v. Director, 801 F.2d 958 (7th Cir.1986). Any party aggrieved by an ALJ's decision can appeal to the Benefits Review Board. 20 C.F.R. Sec. 725.481. Finally, any party adversely affected by the Board's decision can appeal to the court of appeals. 33 U.S.C. Sec. 921(c). In reviewing administrative adjudications under the Act, our function is to determine whether the ALJ's findings are supported by substantial evidence. Old Ben Coal Company v. Prewitt, 755 F.2d 588 (7th Cir.1985); Consolidation Coal Company v. Chubb, 741 F.2d 968 (7th Cir.1984). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Knudtson v. Benefits Review Board, 782 F.2d 97, 98 (7th Cir.1986).
 
 A. Invocation of the Interim Presumption
 
 29
 Relying on 20 C.F.R. Sec. 727.203(a)(5), the ALJ in Dempsey I awarded benefits to Mrs. Dempsey. The ALJ found the (a)(5) presumption properly invoked on the basis of: (1) Mr. Dempsey's more than 10 years of coal mine employment; (2) the attending physician's diagnosis of pulmonary emphysema; and (3) the credible testimony of Mrs. Dempsey, her son, and the affidavits of six co-workers, who had knowledge of Mr. Dempsey's physical condition. (Petitioner's App. A-7). The ALJ concluded that "[a]ll of this evidence combined demonstrates the presence of a totally disabling chronic respiratory or pulmonary impairment, arising out of coal mine employment, at the time of death which has not been rebutted by the Employer." (Petitioner's App. A-7--A-8).
 
 
 30
 In reversing the ALJ's decision, the Benefits Review Board, with one member dissenting, held that the ALJ erred when he invoked the presumption based on a combination of sections (a)(4) and (a)(5) of the interim presumption regulation.[2] The Board then evaluated the evidence separately under the two subsections. Under (a)(4), the Board concluded that the attending physician's report was insufficient to support invocation because it expressed no opinion as to the degree of respiratory disability. Thus, said the Board, section (a)(4) did not provide a basis for the ALJ's ruling that Mr. Dempsey's emphysema was "a totally disabling respiratory or pulmonary impairment." The Board then held that the ALJ had misinterpreted section (a)(5) as applying "where no medical evidence exists on the issue of disability." (Petitioner's App. A-7). To the contrary, the Board held section (a)(5) applies "only to those instances where no medical evidence is available." (Petitioner's App. A-15). Since Dempsey's file included two doctors' reports in addition to X-ray reports, Mrs. Dempsey was precluded from utilizing section (a)(5). Finally, the Board found that the ALJ had erred in failing to explain why the employer's evidence was insufficient to establish rebuttal. The Board also noted, however, that the ALJ's failure to explain was harmless error in view of the Board's finding that the record contained insufficient evidence to support invocation of the presumption. (Petitioner's App. A-16 n. 2).
 
 IV.
 
 31
 The first question we address is whether the Board improperly held that the availability of some medical evidence renders inappropriate invocation of a presumption pursuant to 20 C.F.R. Sec. 717.203(a)(5). Mrs. Dempsey properly raises this question since the Board's June 11, 1981 order reversing the ALJ's invocation of the (a)(5) presumption and remanding the case to the ALJ for a determination of entitlement alternatively under 20 C.F.R. Part 410, subpart D, was not appealable to this court. See Freeman United Coal Mining v. Director, OCWP, 721 F.2d 629 (7th Cir.1983).
 
 
 32
 We hold that the Board improperly interpreted Sec. 727.203(a)(5). Nothing in the legislative history of the Black Lung Benefits Reform Act supports the Board's narrow reading of the interim presumption regulation. Section 727.203(a)(5) is derived from Section 413(b) of the Act, which authorizes the use of affidavits to establish entitlement where there exists "no medical or other relevant evidence." 30 U.S.C. Sec. 923(b). Congress, in 1977, amended section 413(b) to provide for the legal sufficiency of affidavits in the case of a deceased miner because "[e]vidence available to a miner's widow is often incomplete, inadequate, or non-existent." S.Rep. No. 209, 95th Cong., 1st Sess. 11-12 (1977). The House Report on the 1977 amendments noted that the amendments to Section 413(b) were designed to address:
 
 
 33
 the dilemma of survivors who, because of the absence of any relevant medical evidence regarding the physical condition of deceased miners cannot establish the validity of an otherwise valid claim. In most cases, the miner died many years ago, and such evidence has been lost or destroyed by the miner's physician, or is otherwise non-existent.
 
 
 34
 H.R.Rep. No. 151, 95th Cong., 1st Sess. 19-20 (1977), U.S.Code Cong. & Admin.News 1978, pp. 237, 255-256.
 
 
 35
 The Senate Report on the 1977 Act subsequently stated that:
 
 
 36
 [e]xisting law provides that affidavits may be used, along with other evidence to substantiate a claim for benefits.... [I]n the case of a deceased miner, a widow's affidavit may be used by itself to establish the presumption. Further, it is implicit that since affidavits are "relevant evidence" under Section 413(b), and all relevant evidence shall be considered in determining a claim's validity, where affidavits are the only evidence, that evidence may be sufficient to establish a claim....
 
 
 37
 S.Rep. No. 209, 95th Cong., 1st Sess. 12 (1977) (emphasis in original). From this passage, it is clear that the correct interpretation of Section 413(b) is that in the case of a deceased miner, affidavits must be considered where the other relevant evidence is insufficient to establish entitlement, and may suffice, in themselves, to establish entitlement where there is no other relevant evidence.
 
 
 38
 In promulgating 20 C.F.R. Sec. 727.203(a)(5), the Department of Labor attempted to carry out the 1977 amendments to Section 413(b). Given the purpose of these amendments, we read Sec. 727.203(a)(5) as enabling a claimant who does not have medical evidence sufficient to invoke the interim presumption under subsections (a)(1)-(a)(4), to rely on affidavits to establish entitlement. Any other reading of this section would unfairly burden claimants who attempt to invoke the interim presumption under subsection (a)(5). For example, widows with accesss only to legally insufficient medical evidence under subsections (a)(1)-(a)(4) would actually be penalized, under the Board's interpretation, in a way that widows with absolutely no medical evidence would not. A widow who is uncertain of the sufficiency of her medical evidence, moreover, might be forced to forego sections (a)(1)-(a)(4) altogether, for fear that such evidence, if found insufficient to invoke the interim presumption under the first four subsections, would then bar consideration of her affidavits under section (a)(5). Finally, the Board's interpretation of sections (a)(1)-(a)(5) as establishing mutually exclusive avenues of entitlement, might deter seriously ill miners from seeking medical treatment for fear that such visits might one day lead to information which could result in a denial of benefits to their families.
 
 
 39
 Notwithstanding our conclusion that, as a matter of law, the ALJ was correct in concluding that section (a)(5) is available to claimants in those instances "where no medical evidence exists on the issue of disability" (Petitioner's App. A-7), we find that his invocation of the (a)(5) presumption in this case is not supported by substantial evidence.
 
 
 40
 The affidavit rule contained in section (a)(5) requires that to establish entitlement the lay testimony must "demonstrat[e] the presence of a totally disabling respiratory or pulmonary impairment." 20 C.F.R. Sec. 727.203(a)(5) (emphasis added). In the instant case, the ALJ stated that he found the (a)(5) presumption properly invoked on the basis of: (1) Mr. Dempsey's more than 10 years of coal mine employment; (2) the attending physician's diagnosis of pulmonary emphysema; and (3) the credible testimony of Mrs. Dempsey, her son, and the affidavits of six co-workers that Mr. Dempsey had difficulty breathing. The ALJ determined that all of this evidence demonstrated that Mr. Dempsey was totally disabled by a chronic pulmonary impairment.
 
 
 41
 Careful analysis of the record, however, indicates that the ALJ's determination of total disability is not supported by substantial evidence. First, it is undisputed that the only medical evidence of record which at all supports the view that Mr. Dempsey had a pulmonary or respiratory impairment--the attending physician's report that a secondary cause of death was pulmonary emphysema--did not indicate the severity of that impairment or that it was totally disabling. Failing to indicate severity, this evidence cannot demonstrate a totally disabling impairment.
 
 
 42
 Moreover, the lay testimony of Mrs. Dempsey and her son also fails to demonstrate a totally disabling impairment. For example, Mrs. Dempsey testified at the hearing that during the last three years of his life, her husband experienced shortness of breath upon exertion, that he was exhausted at the end of a day's work, and that while sleeping his breathing was erratic. Mrs. Dempsey's youngest son, Dan Dempsey, testified that he often went hunting with his father and that during the last two years before his death, he would often get out of breath and have to stop and rest occasionally. In addition to Mrs. Dempsey's and her son's testimony, the affidavits of six co-workers acquainted with Mr. Dempsey, also established that Mr. Dempsey at times, had difficulty breathing. The lay testimony, though clearly establishing that Dempsey suffered shortness of breath, thus failed to demonstrate that he could not perform his regular employment as a coal mine examiner, a job, which even the ALJ noted, was relatively non-strenuous.[3] 3] See Markus v. Old Ben Coal Co., 712 F.2d 322, 327 (7th Cir.1983) (mere shortness of breath or fatigue does not demonstrate total disability). This conclusion is further buttressed by the fact that Mr. Dempsey worked as a coal mine examiner until he died of cardiac arrest, and the fact that his work record was not characterized by diminished earnings, poor attendance or poor job performance as a result of his shortness of breath.
 
 
 43
 We are aware, however, that the regulation covering the definition of total disability provides that the mere fact that "a deceased miner [is] employ[ed] in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled." 20 C.F.R. Sec. 727.205(a); 30 U.S.C. Sec. 902(f)(1)(B). But we note that that same regulation also provides:
 
 
 44
 In the case of a deceased miner who was employed at the time of death, all relevant evidence including the circumstances of such employment and the statements of the miner's spouse shall be considered in determining whether the miner was totally disabled....
 
 
 45
 20 C.F.R. Sec. 727.205(a).
 
 
 46
 Upon our review of "all relevant evidence," we conclude that Mrs. Dempsey simply has not demonstrated "the presence of a totally disabling respiratory or pulmonary impairment." The evidence produced by Mrs. Dempsey establishes only that her husband suffered shortness of breath; it fails to demonstrate that, at the time of death, Mr. Dempsey was unable to perform his regular coal mine employment, or that Mr. Dempsey's malady was totally disabling. We therefore conclude that the ALJ's invocation of the section (a)(5) presumption was not supported by substantial evidence, and we affirm the Board's denial of benefits under section (a)(5).
 
 V.
 
 47
 The only question remaining before us is whether the ALJ's finding, in Dempsey II, that Mrs. Dempsey did not meet the standards of eligibility under 20 C.F.R. Part 410, subpart D, is supported by substantial evidence.
 
 
 48
 Under Part 410, a claimant can establish entitlement if she can show either that the miner died due to pneumoconiosis or that, at the time of death, he was totally disabled due to pneumoconiosis. 20 C.F.R. Secs. 410.450, 410.410. In reviewing the evidence in Dempsey II, the ALJ determined that neither total disability nor death due to pneumoconiosis was established. To begin with, the ALJ concluded that total disability could not be established under the relevant subsections of Part 410. To reach this conclusion, the ALJ weighed the relevant medical and affidavit evidence and determined: (1) that the lay evidence concerning Mr. Dempsey's shortness of breath was insufficient to establish total disability at time of death which prevented him from performing his usual coal mine work under Sec. 140.414(c);[4] and (2) that the medical evidence failed to show that Mr. Dempsey suffered a "severe lung impairment" as required by Sec. 410.414(b)(4).[5]
 
 
 49
 Second, the ALJ determined that Mrs. Dempsey was unable to establish that Mr. Dempsey's death was "due to" pneumoconiosis. In reaching this conclusion, the ALJ held that Mrs. Dempsey was unable to invoke the presumption contained in 30 U.S.C. Sec. 921(c)(2), which provides that a deceased miner who worked in the nation's coal mines for ten years and who died from a respirable disease will be presumed to have died due to pneumoconiosis. Death will be found due to a respirable disease when:
 
 
 50
 death is medically ascribed to a chronic dust disease, or to another chronic disease of the lung. Death will not be found due to a respirable disease where the disease reported does not suggest a reasonable possibility that death was due to pneumoconiosis. Where the evidence establishes that a deceased miner suffered from pneumoconiosis or a respirable disease and death may have been due to multiple causes, death will be found due to pneumoconiosis if it is not medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death.
 
 
 51
 20 C.F.R. Sec. 410.462(b).
 
 
 52
 The ALJ, although finding 13 years of coal mine employment, nevertheless refused to invoke the presumption because he found the evidence relating to Mr. Dempsey's cause of death--the death certificate and medical report stating that interstitial fibrosis and emphysema were secondary causes of death--not credible.
 
 
 53
 On appeal to this court, Mrs. Dempsey argues that the ALJ's findings are not supported by substantial evidence. While the precise focus of her argument is difficult to determine, it appears that Mrs. Dempsey is contending: (1) that the weight of the medical evidence demonstrates that Mr. Dempsey suffered from a severe lung impairment; and (2) that the ALJ erred in finding not credible Dr. Partridge's diagnosis of interstitial opacities and emphysema.
 
 
 54
 In reviewing the evidence, we find that, contrary to Mrs. Dempsey's assertions, the ALJ's refusal to award benefits under 20 C.F.R. Part 410 is supported by substantial evidence. To begin with, it is well-documented on this record that Dr. Partridge's report listing pulmonary emphysema as a secondary cause of death made no estimate of the severity of that condition. Without such an estimate, the report does not even claim, much less support, a finding of a "severe lung impairment." Second, and more importantly, the ALJ found that Dr. Partridge's diagnosis of interstitial opacities and pulmonary emphysema as secondary causes of Mr. Dempsey's death lacking in credibility. Specifically, the ALJ noted that Dr. Partridge's findings were not supported by the medical evidence contained in the record, nor did the record contain any independent support for Dr. Partridge's findings. The ALJ also noted that Dr. Daniel Potts, a pulmonary disease specialist, took issue with Dr. Partridge's diagnosis on the grounds that it was not supported by any objective medical evidence. Based on the above, the ALJ concluded that the evidence was insufficient to support a finding of death due to respirable disease. Accordingly, the ALJ refused to invoke the Sec. 921(c)(2) presumption.
 
 
 55
 On this record, we cannot say that the ALJ's decision in Dempsey II is not supported by substantial evidence. Where, in a black lung claim, the evidence is conflicting, or where witnesses differ, the trier of fact is empowered to make credibility determinations and to resolve inconsistencies in the evidence. Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797, 802 (7th Cir.1977) ("The evaluation of witnesses' credibility, including that of medical witnesses is for the trier of fact.... [T]he trier is not bound to accept the opinion or theory of any given medical officer, but may weigh the evidence and draw his own inferences."). In this case, the ALJ, although noting Dr. Partridge's status as treating physician, nevertheless discredited his diagnosis because it was not supported by any objective medical evidence. As noted above, the process of crediting and discrediting the evidence is properly within the fact finder's competence. Accordingly, we reject Mrs. Dempsey's contention that the ALJ erred in finding not credible Dr. Partridge's diagnosis of interstitial opacities and emphysema. To the contrary, the ALJ's finding that Ben Dempsey did not die due to pneumoconiosis is nether irrational, nor unsupported by substantial evidence. The ALJ did not selectively analyze the evidence in order to deny Mrs. Dempsey benefits. The ALJ considered all relevant evidence in reaching his decision. We see no reason to disturb his findings or conclusions.
 
 
 56
 Finally, we note that the record does not support Mrs. Dempsey's allegation that the ALJ denied benefits in Dempsey II simply because "having once been reversed for receiving the medical evidence favorably to the claimant, the ALJ would be loath to give the medical evidence its due weight and face another reversal by the Benefits Review Board." (Petitioner's Br. 9-10). Mrs. Dempsey's speculation hardly amounts to a showing that the ALJ failed independently to review the claim under 20 C.F.R. Part 410. This contention is therefore without foundation and must be rejected.
 
 VI.
 
 57
 For the reasons set forth in this opinion the Board's order is
 
 
 58
 AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Pneumoconiosis is defined as a
 chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis-anthro-silicosis, massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.
 
 
 [20]
 C.F.R. Sec. 727.202
 
 
 [2]
 Board Member Miller dissented from the majority decision. In a separate opinion, Miller stated: (1) that the record did not contain sufficient medical evidence to preclude the use of 20 C.F.R. Sec. 727.203(a)(5); (2) that the ALJ properly invoked the interim presumption under section (a)(5); (3) that the evidence as a whole was insufficient to establish rebuttal; and (4) that benefits should have been awarded under 20 C.F.R. Part 410 as a matter of law
 
 
 [3]
 Mr. Dempsey's duties as a mine examiner included entering the mine before the beginning of a shift to test for the presence of hazardous gases. If gas was detected, the miners would not be permitted to enter the mine. After completing the gas-testing, Mr. Dempsey would return to his office to fill out the necessary forms and reports
 
 
 [4]
 The relevant portion of Sec. 414.414(c) provides:
 Other relevant evidence. Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term "other relevant evidence" includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials.
 
 
 [20]
 C.F.R. Sec. 410.414(c)
 
 
 [5]
 Section 410.414(b)(4) provides in relevant part:
 [W]here the evidence shows a work history reflecting many years of ... coal mine employment (although less than 15), as well as a severe lung impairment, such evidence may be considered, in the exercise of sound judgment, to establish entitlement in such case, provided that a mere showing of a respiratory or pulmonary impairment shall not be sufficient to establish such entitlement.
 
 
 [20]
 C.F.R. Sec. 414(b)(4)