878 F.2d 1431
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Bryan WILLIS, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 88-3806.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 31, 1989.
Decided July 6, 1989.
 
 Bryan Willis, petitioner pro se.
 Thomas L. Holzman, Donald Steven Shire, Roscoe Conkling Bryant, III, Steven D. Breeskin, Lawrence W. Rogers, United States Department of Labor, for respondent.
 Before DONALD RUSSELL, MURNAGHAN, and SPROUSE, Circuit Judges.
 
 PER CURIAM
 
 1
 Proceeding pro se, former coal miner Bryan Willis petitions for review of a decision and order of the Benefits Review Board [BRB, or the Board] affirming an administrative law judge's denial of his claim for disability benefits allowable under the Black Lung Benefits Act, as amended, 30 U.S.C. Secs. 901 et seq. [the Act]. We affirm.
 
 I.
 
 2
 Petitioner is 70 years old. He worked twelve years in the nation's underground coal mines, then gave up mining to work in a retail store. He retired in 1980 following a heart attack and qualified for Social Security disability benefits; he has not worked since. In 1981 he filed for disability benefits under the Act.
 
 
 3
 Since petitioner's claim was filed after March 31, 1980, it is governed by the provisions of 20 C.F.R. Secs. 718 et seq. 20 C.F.R. Sec. 718.2. To prevail on a claim brought under these regulatory provisions, the claimant must prove three elements: that he has pneumoconiosis, that he contracted it through his coal mine employment, and that he is totally disabled due to the disease. Director, Office of Workers' Compensation Programs v. Mangifest, 826 F.2d 1318, 1320 (3rd. Cir.1987); Strike v. Director, Office of Workers' Compensation Programs, 817 F.2d 395, 399 (7th Cir.1987).
 
 
 4
 The two dispositive issues raised in this review are (i) whether petitioner has pneumoconiosis and (ii) whether he is totally disabled by the disease.
 
 II.
 
 5
 Under 20 C.F.R. Sec. 718.202(a) three methods are available to petitioner for proving the presence of pneumoconiosis: chest X-ray evidence, a biopsy, and a physician's expert opinion based on sound, medical judgment and objective criteria. The medical evidence received into the record by the ALJ included the following items:
 
 
 6
 A. Three interpretations of a single chest X-ray. Dr. M.R. Ramakrishnan, a B-reader,[1] interpreted the X-ray as disclosing pneumoconiosis, p 1/0. Dr. L.J. Fleenor Jr., petitioner's examining physician and an A-reader, also interpreted the X-ray as disclosing pneumoconiosis p 1/0. Dr. Charles D. Smith, a board certified radiologist[2] and B-reader, reviewed the X-ray for the respondent Director and interpreted it as q 0/1[3]; Dr. Smith also noted that the X-ray was of "marginal film quality."
 
 
 7
 B. Two diagnoses by an examining physician. Dr. Fleenor first examined petitioner in May 1981. Based upon that examination, a non-qualifying[4] arterial blood gas study, and a non-qualifying pulmonary function test he administered, Dr. Fleenor diagnosed petitioner's condition as "post myocardial infarction" not related to dust exposure in petitioner's coal mine employment. Two years later, in 1983, Dr. Fleenor again examined petitioner--but, at petitioner's direction, did not administer additional pulmonary function tests--and, in a letter-report, diagnosed "atherosclerotic coronary vascular disease, bronchitis, and black lung." Dr. Fleenor's 1983 letter-report is not supported by clinical reports or test data.
 
 
 8
 In addition to the medical evidence, petitioner testified before the ALJ that he had breathing problems that he "just can't do anything about; it takes my breath and stuff.... I couldn't pick a broom up, or sweep the floor, or nothing.... I am just short of breath, and I have medical conditions to where I can't work."
 
 
 9
 The ALJ weighed the conflicting X-ray interpretations and the credentials of the radiologists[5] and concluded that the presence of pneumoconiosis was not established by radiological evidence. In his decision and order the ALJ specifically noted the conflicting readings by Drs. Fleenor and Smith and to the superiority of Dr. Smith's credentials in radiological interpretation, and accorded "full evidential weight" to Dr. Smith's negative diagnosis; however, he failed to mention the positive interpretation by Dr. Ramakrishnan, the weight he accorded Dr. Ramakrishnan's credentials, or the conflicts between Dr. Ramakrishnan's and Dr. Smith's interpretations.
 
 
 10
 The ALJ also concluded that Dr. Fleenor's diagnoses and reports lacked the force of objective medical evidence to qualify as a "reasoned medical opinion" that petitioner was afflicted with pneumoconiosis. Thus, he denied Bryan Willis's claim for disability benefits.
 
 
 11
 In reviewing the ALJ's decision and order, the Benefits Review Board concluded that
 
 
 12
 There is no evidence ... sufficient to establish that claimant has a totally disabling respiratory impairment. The only pulmonary function study and blood gas study on record are non-qualifying.... There is no evidence that claimant suffers from cor pulmonale.... There is no other evidence showing that claimant is totally disabled due to a respiratory impairment.
 
 
 13
 Thus, the BRB affirmed the ALJ's denial of Bryan Willis's application for black lung disability benefits.
 
 III.
 
 14
 In considering a petition for review of a decision and order of the Benefits Review Board the scope of our review is limited. We examine only for errors of law, including whether the Board properly reviewed the ALJ's decision. Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs, 642 F.2d 68, 69 (4th Cir.1981). We have made it clear that an ALJ's factual findings must be upheld if they are supported by substantial evidence because the ALJ is "in a better position to assess the weight and sufficiency of the evidence than ... this court." Zbosnik v. Badger Coal Company, 759 F.2d 1187, 1190 (4th Cir.1985); see also Wilson v. Benefits Review Board, 748 F.2d 198, 200 (4th Cir.1984). We review Willis's petition for review in this scope and against these standards.
 
 
 15
 Petitioner contends that the BRB acted arbitrarily in denying his claim; specifically, he contends that the BRB and the ALJ erred in failing to accord him the benefit of the presumptions provided at 20 C.F.R. Secs. 718.203 and .305. This contention is without merit.
 
 
 16
 The presumption appearing at Sec. 718.305 goes to proof of the existence of pneumoconiosis and is available only to miners who prove they worked fifteen or more years in underground coal mines. Since Willis established only twelve years mining employment, this presumption is not applicable to his claim for benefits.
 
 
 17
 The presumption appearing at Sec. 718.203 goes to the issue of causation: to qualify for disability benefits under Part 718 the miner must prove that his pneumoconiosis arose at least in part from his coal mine employment. For miners afflicted with pneumoconiosis who establish ten or more years coal mine employment, this regulation provides a rebuttable presumption that their pneumoconiosis arose from such employment. Until Willis proved that he had pneumoconiosis, this presumption was inapplicable to his application for benefits.
 
 
 18
 Petitioner also contends that the ALJ and the BRB incorrectly concluded that he failed to prove the existence of pneumoconiosis, and that the ALJ improperly considered the medical and testimonial evidence. Although petitioner does not elaborate on these points, we conclude that these contentions are controverted by the record.
 
 
 19
 First, the ALJ weighed the conflicting X-ray interpretations and determined that such evidence was insufficient for establishing that petitioner was afflicted with pneumoconiosis. This was a judgment call for the ALJ and we cannot say that his decision is without a factual foundation or is contrary to law.
 
 
 20
 Second, the ALJ properly considered the medical opinion evidence. We have held that an ALJ must evaluate the credibility of the medical evidence and determine the weight it will be accorded. Zbosnik, 759 F.2d at 1190. Further, the ALJ need not necessarily accept a physician's conclusions or any part of the medical evidence; rather, he can consider the evidentiary basis upon which the physician rests his conclusion, Fields v. Island Creek Coal Co., 10 Black Lung Rep. (MB) 1-19, 1-21 (BRB 1987), and draw his own reasonable inferences:
 
 
 21
 [T]he mere fact that an opinion is asserted to be based upon medical studies cannot by itself establish as a matter of law that it is documented and reasoned.
 
 
 22
 Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 255 (6th Cir.1983) (addressing a similar provision appearing at 20 C.F.R. Sec. 727.203(a)(4)). Finally, the factfinder must
 
 
 23
 examine the validity of the reasoning of medical opinion in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based.
 
 
 24
 Id.; Dempsey v. Director, Office of Workers' Compensation Programs, 811 F.2d 1154, 1162-63 (7th Cir.1987).
 
 
 25
 In this case Dr. Fleenor's 1983 diagnosis of "black lung" is merely conclusory--there are no clinical studies or other objective data supporting his bare conclusion. Indeed, the blood gas study and pulmonary function studies Dr. Fleenor first performed in 1981 were non-qualifying for establishing that Bryan Willis had pneumoconiosis; significantly, Dr. Fleenor's 1981 report stated that petitioner's medical infirmity--"post myocardial infarction"--was not related to dust exposure arising from coal mine employment. In view of the total absence of objective medical and clinical evidence, Dr. Fleenor's inclusion of "black lung" in his 1983 letter-report of his examination of Willis appears to be nothing more than gratuitous. The ALJ had good reason for stating in his decision and order that "The doctor's statement is not supported by any medical reasoning as to why he added black lung to this diagnosis." Against this backdrop, we cannot say that the ALJ's evaluation of the medical evidence is reversibly erroneous.
 
 
 26
 Petitioner's final contention is that the BRB failed to consider the Congressional intent of the Act; he cites as authority for his point Stomps v. Director, Office of Workers' Compensation Programs, 816 F.2d 1533, 1534 (11th Cir.1987): "The Act is intended to be remedial in nature, and doubts should be resolved in favor of the disabled miner or his survivors." While we have no disagreement with the Eleventh Circuit's characterization of Congress's intent underlying the Act, we conclude that Stomps has little bearing on Bryan Willis's petition for review. The evidence in Stomps revealed that the claimant's physicians' reports, pulmonary function studies, arterial blood gas studies, and hospital discharge summaries all disclosed the presence of "chronic obstructive pulmonary disease," or pneumoconiosis. Further, the physicians' reports agreed that Stomps was totally disabled by the combined effects of several physical frailties, one of which was shown by arterial blood gas studies to be pulmonary disease. Stomps's physical debilities and the supporting evidence contrast sharply to the case now before us, as the preceding discussion discloses.
 
 IV.
 
 27
 We have reviewed the entire record and have concluded that it is in accordance with law and is supported by substantial evidence that Bryan Willis has failed to prove that he has pneumoconiosis or that he is totally disabled by a pulmonary impairment attributable to his former coal mine employment. Accordingly, the decision and order of the Benefits Review Board affirming the administrative law judge's denial of his application for black lung disability benefits is affirmed. We find that the facts and legal arguments are adequately presented in the parties' briefs and the record and that the decisional process would not be significantly aided by oral argument; consequently, we dispense with oral argument pursuant to Fed.R.App.P. 34(a) and Loc.R. 34(a).
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 A B-reader is a physician who has demonstrated, by taking and passing a specially designed proficiency examination given on behalf of or by the Appalachian Laboratory for Occupational Safety and Health, a proficiency in evaluating chest X-rays for roentgenographic quality and in the use of the ILO-U/C classification system for interpreting chest X-rays and other diseases. 20 C.F.R. Sec. 718-.202(a)(ii)(E). Physicians can be rated as "A" (first) or "B" (final) readers, according to their demonstrated proficiency. A "B" rating denotes a reader of greater experience and proficiency; "B" readers' interpretations may be accorded greater weight by the factfinder. Sharpless v. Califano, 585 F.2d 664 (4th Cir.1978)
 
 
 [2]
 " 'Board-certified' means certification in radiology or diagnostic roentgenology by the American Board of Radiology, Inc., or the American Osteopathic Association." 20 C.F.R. Sec. 718.202(a)(ii)(C)
 
 
 [3]
 A chest X-ray classified 0/, 0/0, or 0/1 does not constitute evidence of pneumoconiosis. 20 C.F.R. Sec. 718.102(b). The 1/0 classification accorded petitioner's X-ray by Drs. Ramakrishnan and Fleenor is minimally qualifying as evidence of pneumoconiosis, while the classification by Dr. Smith is non-qualifying
 
 
 [4]
 I.e., producing test results which are below the minima established by the regulations for compensable pulmonary disease. See 20 C.F.R. Sec. 718.204(c)
 
 
 [5]
 The regulations provide at 20 C.F.R. Sec. 718.202 that
 (a) A finding of the existence of pneumoconiosis may be made as follows:
 (1) A chest X-ray ... may form the basis for a finding of ... pneumoconiosis.... [W]here two or more X-ray reports are in conflict, in evaluating such X-ray reports consideration shall be given to the radiological qualifications of the physicians interpreting such X-rays.