**Alice GREENE, Widow of John Pierschbacher, Petitioner,**

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 88–2815.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1989.

Decided Nov. 21, 1989.

Order Amending Judgment Jan. 24, 1990.*

---

* See 892 F.2d 1385.

John A. Jarvis, Chariton, Iowa, for petitioner.

Ronald G. Ray, Washington, D.C., for respondent.

* The HONORABLE JOSEPH T. SNEED, Senior Circuit Judge, United States Court of Appeals

Before LAY, Chief Judge, SNEED,* Senior Circuit Judge, and McMILLIAN, Circuit Judge.

LAY, Chief Judge.

Alice Greene appeals the Benefits Review Board's decision overturning the Administrative Law Judge's determination that she was entitled to survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* (1982 & Supp. V 1987) (the Act). The primary issue is whether Greene, a miner's widow, presented sufficient evidence to benefit from a presumption under the Act that her husband died of a respiratory disease related to his employment in a coal mine.

John Pierschbacher, a coal miner for more than ten years, died on April 9, 1972. His widow, who took the name Greene upon a second marriage, first applied for benefits under the Black Lung Benefits Act in 1973. Her claim was denied. Following amendments to the Act in 1977, she elected to have her claim reviewed by the Social Security Administration (SSA). SSA denied her claim in 1979. SSA then forwarded her claim to the U.S. Department of Labor for subsequent review. The Department's Office of Workers' Compensation Programs denied her claim once again in 1980, and forwarded the claim to the Office of Administrative Law Judges. In 1985 the administrative law judge (ALJ) awarded her benefits, and in 1988 the Benefits Review Board (BRB) reversed. We reverse the BRB because we find the ALJ's decision supported by substantial evidence in the record.

The Act awards benefits to the survivors of miners who died from pneumoconiosis, or black lung disease, arising from coal mine employment. Under regulations applicable to Greene's case, the survivor is entitled to a rebuttable presumption of total disability due to black lung disease if the survivor establishes at least ten years of coal mine employment, and satisfies one of five medical criteria. 20 C.F.R.

for the Ninth Circuit, sitting by designation.

§ 727.203(a) (1989). In a case where there is no medical evidence, the regulations provide that the presumption still may apply if affidavits of the survivor or other people with knowledge of the miner's physical condition demonstrate "the presence of a totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 727.203(a)(5).

■ The present case was completely devoid of medical evidence concerning the miner's cause of death. Although the record contained a medical certification of death, the ALJ found that the certificate was merely a recording of the fact of death, and that the physician making the record performed no autopsy and had insufficient knowledge to determine the actual cause of death.

With no medical evidence, Greene sought application of the presumption based on affidavits and testimony by the miner's close friends and relatives. Greene testified that for years her husband "had a hacking cough." She said he "would cough at times so he'd just gasp for air and would have [trouble] catching his breath." She stated that near the time of his death, "he was weakening," and "the cough had gotten worse. * * * * He would cough until he couldn't get his breath. You wondered if he was going to be able to catch his breath at all and then he just finally gasped for air and be real weak after he had one of these coughing spells."

When not working at the mine, her husband had liked to work in the fields helping relatives and neighbors, and to pursue a woodworking hobby. In the several months before his death he had been unable to do this work, due to "a remarkable shortness of breath." Greene explained that on the day before his death her husband "was extremely tired" and "just couldn't hardly lift his arms even." He got a flat tire on his way home and was unable to change it himself. He sought help from his nephew to change it for him.

The widow also testified that her husband's job at the mine was physically demanding and that he continued regular full-time work at the mine up until the Friday before the Sunday he died. He had never gone to a doctor except for a foot injury on the job and he did not complain about his physical condition.

Three other witnesses also testified, including the miner's nephew, his brother, and a long-time friend. Their testimony corroborated the widow's. Each stated that the miner experienced terrible debilitating coughing fits that worsened near his death. They confirmed he had been unable to help with farm work or even change a tire in the days before his death. They also stated that his work at the mine took place under conditions exposing him to large amounts of coal dust, but that he continued to perform his physically demanding job without complaint up until his death.

Based on the evidence that the miner continued working up until the weekend of his death, the Secretary of Labor argued that the lay testimony could not support a conclusion that the miner was "totally" disabled, as required for invocation of the presumption. The ALJ, however, found that

> the affidavits and testimony in the record amply demonstrate that the decedent's continued coal mine employment up to the week-end before he died was carried on only by his extraordinary effort, and that in any reasonable sense he was racked by a totally disabling respiratory or pulmonary impairment sufficient to invoke [the presumption].

The Benefits Review Board reversed, holding that the ALJ's award was not supported by substantial evidence. In essence the BRB stated that if the miner continued working in his regular and physically strenuous job, without need of assistance, then he could not have been totally disabled. The BRB stated that even accepting all the lay testimony that the miner had difficulty breathing and experienced coughing fits, and that he was unable to change a tire on the day of his death, the evidence still was not sufficient to support a presumption of total disability.

Consistent with our recent decision in *Mikels v. Director, Office of Workers'*

*Compensation Programs,* 870 F.2d 1407 (8th Cir.1989), we reverse. In *Mikels,* as in the present case, the miner's widow had no medical evidence on which to base her claim. She offered only her own testimony and that of her daughter. The two testified that the miner coughed frequently, was short of breath, and was too tired to perform any work around the house. They also testified as to their perception, the community's perception, and the miner's perception that his symptoms had affected his occupational functioning.[1] As in the instant case, however, the miner worked full time up until his death, and the record contained no evidence from the miner's employer or co-workers that the miner's breathing problem impaired his job performance.

The ALJ in *Mikels,* as in this case, found that taken as a whole the evidence was sufficient to establish the presence of a totally disabling respiratory impairment for the purposes of the presumption of 20 C.F.R. § 727.203(a)(5). The BRB reversed, holding that the evidence was insufficient to support the ALJ's decision because the evidence provided no basis to compare the miner's physical impairments with the demands of his coal mine work. This court reversed the BRB. We held that despite the lack of evidence to show the miner could not meet the demands of his job, the record as a whole contained substantial evidence to support the ALJ's finding. *Mikels,* 870 F.2d at 1410–11.

■ The facts of these two cases are quite similar, although *Mikels* presents a somewhat stronger case for total occupational disability. However, we do not find the distinction to be significant. Contrary to the holdings of the Fourth and Seventh Circuits, we do not require direct evidence of impaired work functioning, such as testimony of poor job performance or absenteeism, for a finding of total disability.[2]

■ Although the record in this case suggested that the miner continued to perform a physically strenuous job up until his death, such evidence is not conclusive.[3] The ALJ found that only the miner's herculean efforts allowed him to continue on the job, and that he was totally disabled by any reasonable interpretation of the phrase. Substantial evidence clearly underlay this finding, and the BRB erred by placing conclusive weight on the miner's continued coal mine work.

The determination of the BRB is reversed, and the ALJ's award reinstated with retroactive payments plus interest for the period between the BRB's decision and the date of this judgment.

---

1. Specifically, Mrs. Mikels testified that the year before his death, the miner had quit his job as a road grader because he was short of breath. *Mikels,* 870 F.2d at 1408. She reported that her husband had trouble finding work afterwards and was unemployed for awhile, "[b]ecause people knew he had a breathing problem." *Id.* at 1409. In addition, Mrs. Mikels and her daughter testified that they and the miner believed that he had been unable to perform adequately the coal mine job in which he was employed when he died. *Id.*

2. In *Pendleton v. Director, Office of Workers' Compensation Programs,* 882 F.2d 101, 104 (4th

Cir.1989) and *Dempsey v. Director, Office of Workers' Compensation Programs,* 811 F.2d 1154, 1160–61 (7th Cir.1987), the Fourth and Seventh Circuits upheld denials of benefits where the miners continued their usual coal mine jobs until their deaths and their widows failed to produce evidence of attendance and performance problems.

3. 20 C.F.R. § 727.205(a) (1989) plainly states that "[a] deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled."