**Lauretta L. DOBBINS,
Plaintiff-Appellant,**

v.

**Richard SCHWEIKER, Secretary of
Health and Human Services,
Defendant-Appellee.**

No. 78–3100.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1980.

. Decided April 20, 1981.

Frances L. Hancock, Hancock, Anthenien & Compton, San Francisco, Cal., for plaintiff-appellant.

---

Alan M. Grochal, Baltimore, Md., for defendant-appellee.

Before ELY and GOODWIN, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge:

The sole question before this Court is whether the Secretary's decision denying benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972 (Act), 30 U.S.C. § 901 *et seq.*, was supported by substantial evidence that Dobbins failed to marshal sufficient evidence to establish the existence of a total disability.[1] We find that it was not and reverse.

Elbert Dobbins was a northern Alabama coal miner. He married the plaintiff-appellant in 1917. One morning in June, 1926, he was killed at the mine. He had been seated on tracks upon which loaded coal hoppers traveled, and was crushed when he could not scramble to safety from an onrushing coal car. Mrs. Dobbins, a seventy-nine year old widow who has never remarried, now seeks widow's benefits under the Act. §§ 411(a) and 412(a)(2) of the Act, 30 U.S.C. §§ 921(a) and 922(a)(2). Mrs. Dobbins would be eligible for benefits if at the time of her husband's death, he was "totally disabled," as defined by the Act, from pneumoconiosis. Pneumoconiosis, known to laymen as black lung, is a chronic dust-caused malady which ultimately creates a totally disabling respiratory or pulmonary impairment. § 402(b) of the Act, 30 U.S.C. § 902(b), 20 C.F.R. § 410.110(*o*).

Our inquiry focuses upon whether plaintiff met her burden of proof in establishing that Mr. Dobbins was totally disabled. Alternatively stated, is the Secretary's finding that she did not meet her burden supported by substantial evidence?

Mrs. Dobbins filed an application under the Act in July, 1971. There is no doubt from the factual record in this case that Mr. Dobbins was suffering to some degree from black lung when he died, but at the first hearing before an administrative law judge (ALJ), the claim was denied. The ALJ determined that Mrs. Dobbins failed to prove that her husband was totally disabled by the disease when he was killed. After the Act was first amended in 1972,[2] Mrs. Dobbins reapplied, and the claim was again rebuffed. At a third administrative hearing in 1975, the ALJ affirmed this decision with a written opinion which was upheld by the Appeals Council. This constituted the final decision of the Secretary of Health, Education and Welfare, the officer charged with administering the program.

Mrs. Dobbins sought judicial review of this decision in the district court. In July, 1977, the district court remanded the case for the Secretary to obtain and review additional evidence on the total disability issue. This new hearing was held in October, 1977. Again the ALJ recommended that the claim be denied. The Appeals Council upheld that decision on April 11, 1978. The district court upheld this decision via summary judgment in favor of the Secretary, and this appeal followed.[3] In effect, this claim has been in the administrative-judicial system for nine years.

Despite the numerous hearings held, the evidence in favor of a finding of total disability is, as should be expected, sparse. Mr. Dobbins died 55 years ago. The physi-

---

\* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

2. Pub.L.No. 92–303, 86 Stat. 150 (1972).

3. Although the district judge orally stated that an opinion would issue explaining the reasons for this decision, no written memorandum has been filed.

cian who treated him died long ago and left no medical records. Vandals destroyed the dispensary records pertaining to this victim. For these reasons, Mrs. Dobbins was forced to rely upon lay testimony, including her own, to establish her entitlement.

Mrs. Dobbins unrefuted testimony, if believed, solidly supports a finding of total disability. Mrs. Dobbins testified that her husband had been treated for miner's asthma and severe shortness of breath. She stated he spit up mouthfuls of coal and was being treated by a doctor for these conditions, including coughing which became progressively worse. She testified that in the last two years prior to his death, her husband would return from work choked and exhausted, unable to do anything but lay down and cough. She testified that his earnings had fallen off as his illness grew, but that he continued to work in the mines because he had no alternative. She stated that he was unable to complete his work in the mines without continuous assistance from fellow miners, and there were days when he could not work at all. He was unable to complete his farm chores.

These statements were fully corroborated by the testimony of other persons of the deceased's generation who answered written interrogatories. They described Mr. Dobbins' health in the same manner. They mentioned his apparent black lung condition, coughing, his inability to complete his work, and the progressively debilitating nature of his illness. No contrary evidence was put forward. The ALJ did not indicate any doubts as to the veracity or memory of these witnesses.

## STANDARDS OF REVIEW

Initially, the burden of proof rests with the person who files a claim with an administrative agency to show that the required conditions of eligibility are met. 20 C.F.R. § 410.410(b).

In *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir.), *cert. denied*, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972), the standard of review [4] to be applied was stated:

On appeal to this court, the findings of the Secretary are conclusive if supported by substantial evidence looking to the record as a whole. *Harvey v. Richardson*, 451 F.2d 589 (9th Cir. 1971), *Rhinehart v. Finch*, 438 F.2d 920 (9th Cir. 1971). Likewise, the statutory restriction upon our review applies to the inferences drawn from such facts, if they have a substantial basis in the record. *Mark v. Celebrezze*, 348 F.2d 289 (9th Cir. 1965).

The Supreme Court has held that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938), quoted in *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

At the outset it should be noted, however, that Mrs. Dobbins' claim was not decided on the basis of weighing contradictory or conflicting evidence as was the case in both *Perales* and *Beane*. There is no conflicting evidence in this case, only the information the plaintiff has brought forward. In all previous proceedings, judicial officers have merely weighed the information brought forward to decide whether the plaintiff had met her burden. In *Perales*, a government physician was vehemently opposed to the payment of benefits, classifying the respondent as a malingerer and phony. In this case no similar credibility determination was made to discredit the evidence put forward. The only question is whether the evidence presented was sufficient.

Section 411(b) of the Act, 30 U.S.C. § 921(b) delegates to the Secretary the authority to promulgate legal standards governing a finding that a miner suffered from pneumoconiosis. 20 C.F.R. § 410.414(b).

---

4. The actual standard is set out in § 413(b) of the Act, 30 U.S.C. § 923(b), which incorporates

by reference the Social Security Act, 42 U.S.C. § 405(g).

*See also* 20 C.F.R. § 410.454(a). There are several methods by which the existence of the disease can be proven. It can be done by providing an x-ray, or the results of a biopsy or autopsy that medically proves the existence of the disease. 20 C.F.R. § 410.-414(a). *See also* 20 C.F.R. § 454(a). It can be proven by showing that the deceased perished from a respiratory disease after working at least ten years in the mines. 20 C.F.R. § 410.462(a). It can also be proven by a combination of medical data and lay opinion when the miner died from pneumoconiosis, not an accident. 20 C.F.R. § 410.-454(c). None of these methods can be applied here.

Recognizing that hard medical evidence would often be lacking, particularly where the miner had died some time ago, the Secretary created several presumptions of impairment which would entitle a claimant to recover benefits. One such presumption arises when it is shown that the miner has worked the requisite number of years in the mines, 20 C.F.R. § 410.414(b)(3) and (4), and proof is shown that the miner suffered from a totally disabling chronic respiratory impairment. 20 C.F.R. § 410.414(b)(1).

Mrs. Dobbins was able to establish that her husband satisfied the requirement of time in service to satisfy the first portion of this presumption. 20 C.F.R. § 410.414(b)(3) requires fifteen years' service in the mines. The ALJ apparently had some doubt as to whether this fifteen year provision was satisfied. A statement of the U. S. Steel Corporation disclosed that the deceased miner had worked at least 11 years in its mines. This was supplemented by the written affidavits already discussed. These affidavits indicate Mr. Dobbins began work in the mines at age thirteen or fifteen, and worked there until his death approximately twenty-five years later, albeit sporadically near the end of his life. The ALJ presented no further findings as to whether these

affidavits were accepted or refuted. Reading the record as a whole, the Appeals Council conceded this longevity issue in its decision.[5]

The Senate Report on the Black Lung Benefits Act of 1972 summarized the problems of the original legislation and stated:

The Black Lung Benefits Act of 1972 is intended to be a remedial law—to improve upon the 1969 provisions so that the cases which should be compensated, will be compensated. *In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors.*

U:S. Code Cong. & Adm. News 2305, 2315 (1972)· (emphasis added). The spirit of the legislation requires us to resolve doubts in favor of the miner's family. Where the events in question took place so long ago, proof may reasonably depend not only on company records, but upon lay testimony. *Karpovich v. Mathews,* 426 F.Supp. 1316, 1317 (E.D.Pa.1977). While these affidavits and her lay testimony may well be insufficient when records exist from which dispositive proof can be advanced, that is not the case here.

For similar reasons, we find that Mr. Dobbins was suffering from a chronic respiratory impairment. The available evidence indicates that he was suffering from such a condition, or at least a "severe lung impairment," 20 C.F.R. § 410.414(b)(4), based on the testimony previously discussed. This case bears a striking resemblance to *Lloyd v. Mathews,* 413 F.Supp. 1161 (E.D.Pa.1976), where the Secretary's determination that the plaintiff's lay testimony did not establish total disability was reversed. There, as here, the miner was killed by an accident, not pneumoconiosis, and was working in some capacity near the time of his death. The plaintiff in that case and her sister presented lay testimony regarding the de-

---

5. 20 C.F.R. 410.414(b)(4) allows miners who worked "many years," but did not reach the fifteen year requirement established by (b)(3), to receive the presumption of impairment if he suffered from a "severe lung impairment." Clearly, Mr. Dobbins met this requirement even if he had only worked at the U.S. Steel Corporation mine.

ceased miner's physical condition during the last years of his life. They indicated that he exhibited the classic symptoms of miner's asthma, evidence similar to that presented here. In evaluating the testimony, the court stated:

> [W]here the claimant is forced to proceed without the benefit of any favorable presumption on the issue of total disability, the Secretary must consider all the facts of the case and "other relevant evidence" besides medical or physical performance data. *Lay testimony from the widow and other persons with knowledge of the deceased minor's [sic] physical condition is of crucial importance here and must be given due weight by the finder of fact.*

*    *    *    *    *    *

The Administrative Law Judge made no specific finding of fact on the question of whether the plaintiff's late husband suffered either from black lung disease or from a "chronic respiratory impairment," but based on the evidence summarized above, I hold that the plaintiff has carried her burden of proof on this issue. *There is absolutely no basis in the record for a contrary finding.*

413 F.Supp. at 1164–65 (emphasis added).

In conclusion, the court stated:

> That is the crux of this case: the Administrative Law Judge, in his own words, found the plaintiff's evidence to be "not convincing" on the issue of total disability. He gave no reason for disbelieving the testimony of the plaintiff or her sister, nor did he confront them at the hearing with his skepticism and give them an opportunity to refute his doubts or to explain away what the Secretary now characterizes as "conflicts" in the evidence. An Administrative Law Judge is not required to believe the testimony of interested witnesses, even if not contradicted, *Rennar v. Weinberger,* 399

F.Supp. 1301, 1304 (E.D.Okl.1975), but he has a correlative duty to make a specific finding of fact to that effect, *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). He also has an obligation, in this non-adversary proceeding, to solicit testimony or steer the claimant to do so, if need be, in order to clarify the record on critical points.

413 F.Supp. at 1166–67 (footnote omitted).

In this case, the government asserts that plaintiff-appellant has not *established* that Mr. Dobbins suffered from a chronic respiratory disease. The available evidence does not support this finding. As was stated in *Lloyd* :

> The Federal Coal Mine Health & Safety Act of 1969, as amended, contains no statute of limitations to bar claims such as this which arose many years ago. It is, on the contrary, a remedial and essentially compassionate statute which is designed to compensate miners or their survivors, however imperfectly or late, for the ravages of black lung disease. Where the passage of time makes it difficult for a claimant to establish eligibility and forces her to rely almost exclusively upon her own memory of her husband's physical condition and degree of disability, the Secretary in my judgment has a special duty of care to avoid a hypertechnical or insensitive approach to the evidence, lest a meritorious claim be denied through inadvertence or an inadequate record.

413 F.Supp. at 1167.

A finding of total disability can be made upon medical evidence which is not available here.[6] Instead, plaintiff had the burden of proving that due to pneumoconiosis the deceased's work in the mines did not constitute comparable and gainful work. This can be proven by declining earnings and poor job performance, as well as sporadic

---

**6.** Section 411(c)(3) of the Act, 30 U.S.C. § 921(c)(3) and 20 C.F.R. § 410.418 allows for an irrebuttable presumption of disability if "complicated pneumoconiosis" is clearly diag-

nosed. Obviously, that is inapplicable in this case. Nor can the medical presumption in 20 C.F.R. § 410.490, or the medical tests at 20 C.F.R. § 410.424 be applied here.

work activity on the part of the victim. 20 C.F.R. § 410.412(b)(1). *See also* 20 C.F.R. §§ 410.422(c) and 410.426(a). That a miner was working in some capacity at the time of his death does not alone decide the issue of whether he was totally disabled. Although physically weakened, miners often struggle on to support their families. Congress clearly intended to benefit the survivors of miners who died while working:

> Under the operation of the law as it now exists, a widow is at the mercy of circumstance. Although her husband clearly had totally disabling pneumoconiosis, and would have been eligible were he alive, he may have died in a rock fall, an accident, or even a heart attack which may not be established medically to be causally related to pneumoconiosis. Under these circumstances his widow would not be eligible. However, the widow's neighbor, whose husband died of natural causes after receiving title IV benefits, is entitled to the widow's benefits of title IV. Such a result would seem to be unduly harsh with respect to widows whose husbands gave their health, and in many cases their lives, in the service of the nation's critical coal needs.

(Senate Report) U.S. Code Cong. & Admin. News 2305, 2312 (1972).

> The reasons for these denials are many. The great majority of denials are attributed to the inability of the miner to present X-ray evidence of the disease. Some have been denied because the simple breathing test, which measures only ventilatory capacity, may not adequately detect disabling respiratory or pulmonary impairment. Some have been denied because of the failure to recognize the special problems encountered by disabled miners in obtaining gainful employment outside of coal mining in Appalachia.

> Over a hundred years ago, Emile Zola wrote his non-medical description of the coal miner in *Germinal*:

> "Have you been working long at the mine?" He flung open both arms.

"Long? I should think so. I was not eight when I went down and I am fifty-eight. They tell me to rest, but I'm not going to; I'm not such a fool. I can get on for two years longer, to my sixtieth, so as to get the pension." A spasm of coughing interrupted him again. "I never used to cough; now I can't get rid of it. And the queer thing is that I spit."

The rasping was again heard in this throat, followed by a black expectoration.

"Is it blood?"

He slowly wiped his mouth with the back of his hand.

"No, it's coal. I've got enough in my carcass to warm me till I die. And it's five years since I put a foot down below. I stored it up, it seems, without knowing it."

Suffice it to say that this miner's widow, were she alive today, would have great difficulty in obtaining benefits.

*Id.* at 2313.

In a case that is similar to this one, it was stated:

> There are certain limited circumstances under which a miner can, through sheer determination, continue to work and still qualify as totally disabled. In order to fit within this narrow category of "working disabled", it is necessary for a claimant to show that the miner's work attendance was sporadic, his performance poor, and his earnings marginal.

*Collins v. Mathews*, 547 F.2d 795, 797–98 (4th Cir. 1976) (footnote omitted).

In *Collins*, the miner had been killed in a mine accident, and his widow sought benefits for his total disability at death. The *Collins* court concluded that the denial of benefits was not supported by substantial evidence, basing the reversal upon evidence of reduced earnings. The Dobbins claim stems from a simpler time, when record keeping was more casual, and the Social Security Administration had not yet begun

its massive collection and retention of persons' work histories. Despite the lack of clearly dispositive proof of her husband's total disability at the time of his death, the Secretary's findings that appellant failed to meet her burden of proving total disability is not supported by substantial evidence in light of the unrefuted lay testimony and affidavits that such a disability did exist.

■ Mrs. Dobbins urged in oral argument that the court apply the 1977 amendments to the Black Lung legislation.[7] These amendments liberalize the evidentiary requirements necessary for a claim such as this one. Neither party briefed the issue of whether these amendments should be applied retroactively. Were they to be so applied, it is certain beyond a doubt that this claim would have been approved. Two circuit courts, however, have ruled that these amendments should not be retroactively applied.[8] Due to our disposition of this case, it is unnecessary to decide this issue. Even if the amendments are not applied retroactively, we cannot close our eyes to the unequivocal Congressional intent for a compassionate application of this statute to those who have suffered. As was stated in *Treadway v. Califano*, 584 F.2d 48, 49–50 (4th Cir. 1978) (en banc):

Almost from the beginning, apparently, the Congress was dissatisfied with the HEW's administration of the Act. It was thought that deserving claims were being impeded and denied. This thought prompted the adoption of the 1972 amendments liberalizing the standards to be applied in adjudicating the claims and creating a number of presumptions facilitating proof of claims. Administration of the 1969 Act, as amended in 1972, however, did not come up to congressional expectations. There was active consideration of further amendments in 1975, and the congressional purpose that still more claims be allowed and paid resulted in the Black Lung Benefits Reform Act of 1977.

\* \* \* \* \* \*

The history of the 1977 Act shows clearly congressional concern that too few miners were being paid the benefits Con-

---

**7.** Black Lung Benefits Reform Act of 1977, Pub. L.No. 95–239, 92 Stat. 97.

**8.** Section 402(f) of the Act, 30 U.S.C. § 902(f), was amended to state in part:

[A] deceased miner's employment in a mine at the time of his death shall not be used as conclusive evidence that the miner was not totally disabled;

30 U.S.C. § 902(f)(1)(B)(i).

Section 413(b) of the Act, 30 U.S.C. § 923(b), was also amended to state:

In determining the validity of claims under this part, all relevant evidence shall be considered, including . . . wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials. *Where there is no medical or other relevant evidence in the case of a deceased miner, such affidavits shall be considered to be sufficient to establish that the miner was totally disabled due to pneumoconiosis. . . .*

(emphasis added).

As a general rule, appellate courts will apply changes in laws that come into effect after an initial judgment, but before an appeal is decided. In fact, this presumption applies unless there is a clear indication to the contrary in the legislation, or when it becomes necessary to avoid manifest injustice. *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 103 (1801); *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

Two circuits have already ruled, that these particular amendments are not to be applied retroactively. *Treadway v. Califano*, 584 F.2d 48 (4th Cir. 1978) (en banc); *Yakim v. Califano*, 587 F.2d 149 (3d Cir. 1978).

The *Yakim* court was persuaded that the amendments' legislative history, which included the apparent striking of a retroactivity provision in the Senate-House Conference Committee, precluded an application of these changes to pending cases. *Id.* at 150. The *Treadway* court similarly concluded that any application of the 1977 amendments would be inconsistent with the administrative mechanism, since the change would affect the evidence put forward and the burden of proof. They concluded that such a task was initially one for the fact finder, and therefore decided that the claims would be considered exclusively under the 1969 Act and the 1972 amendments thereto. *Id.* 584 F.2d at 51–52.

We express no opinion as to the correctness of these holdings.

gress had intended to provide them when enacting the legislation in 1969 and 1972. There is no suggestion in the legislative history anywhere of a congressional intention to take anything away from any miner, or to limit benefits which were available to him prior to enactment of the 1977 Act.

(footnote omitted).

We cannot ignore the thrust of congressional desires exhibited in the passage of the original legislation, and its subsequent amendments. Indeed, it would violate Congress' clearly demonstrated intent if claims such as this one were evaluated without reference to those often stated policy concerns implicit therein.

For all of these reasons, the decision of the Secretary as approved by the District Court's summary judgment order is reversed, with the direction that benefits be paid to the plaintiff without further delay.

REVERSED.