**Dorothy V. COLLINS, Petitioner,**

v.

**OLD BEN COAL COMPANY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 85–2893.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1987.

Decided Oct. 26, 1988.

Joe D. Black, Ramsey & Black, Vincennes, Ind., for petitioner.

Jeffrey J. Bernstein, U.S. Dept. of Labor, Washington, D.C., Bronius K. Taoras, Old Ben Coal Co., Lexington, Ky., for respondents.

Before FLAUM and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Petitioner Dorothy V. Collins, widow of coal miner William L. Collins, seeks review of the final order of the Department of Labor's Benefits Review Board (Board) affirming the denial of survivor benefits by an Administrative Law Judge (ALJ) under the Black Lung Benefits Reform Act, 30 U.S.C. §§ 901 *et seq.* We have jurisdiction under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), and the Black Lung Benefits Act, 30 U.S.C. § 932(a). Petitioner raises only one issue: whether there was substantial evidence to support the ALJ's finding that the deceased miner had not died or become totally disabled as a result of a chronic respiratory condition or pneumoconiosis. We affirm.

On April 14, 1978, William L. Collins filed a claim for benefits under the Black Lung Benefits Reform Act, which was enacted by Congress "to provide benefits ... to coal miners who are totally disabled due to pneumoconiosis[1] and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a). While his claim was pending, the miner suffered a heart attack and died. His widow, Dorothy V. Collins, petitioner herein, filed for survivor's benefits on March 5, 1979.

The Department of Labor denied petitioner's claim on August 1, 1979 and again, after reviewing additional information, on May 2, 1980. The agency reasoned that the evidence did not show that Collins had died of pneumoconiosis or was suffering from the disease when he died.

A formal hearing on Collins' claim was held before Administrative Law Judge Robert L. Hillyard on June 15, 1982. Concluding that the claimant could not establish entitlement to benefits under the pertinent black lung benefits provisions, 20 C.F.R. §§ 727.203(a) and 410.454, he denied the claim on October 8, 1982. The Benefits Review Board affirmed ALJ Hillyard's decision on August 27, 1985, finding that it was supported by substantial evidence. Mrs. Collins has appealed that determination to this court.

### I

The Black Lung Benefits Act (and its amendments), found at Title IV, 30 U.S.C. §§ 901–960, is the black lung compensation program enacted by Congress in 1972.[2]

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Pneumoconiosis is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). See also such regulations as 20 C.F.R. § 410.101(*o*) and 20 C.F.R. § 727.202, which further define the disease by including conditions which must be met for the purposes of specific subparts of the regulations.

2. Both the Supreme Court and this Court of Appeals have discussed in depth the evolution and structure of the Black Lung Act and Black Lung Benefits Act, which amended Title IV of the Federal Coal Mine Health and Safety Act of 1969. *See, e.g., Mullins Coal Co. v. Director,*

To become eligible for benefits under the Act, a miner must satisfy four basic requirements: (1) that he is a coal miner as defined by the Act; (2) that he is afflicted with pneumoconiosis; (3) that he is totally disabled; and (4) that the cause of his disability is pneumoconiosis. *See The "Black Lung" Act: An Analysis of Legal Issues Raised Under the Benefit Program* (1981) (Federal Judicial Center) at 9. A claimant satisfies these elements by presenting records of his work history, specific evidence of his medical illness, and in some circumstances by personal or third-party affidavits describing the claimant's inability to engage in heavy work and his breathing difficulties. *Id.* Although the burden of proving eligibility and entitlement to benefits is on the claimant, the statute eases this burden by creating a rebuttable presumption of total disability or death due to pneumoconiosis. 30 U.S.C. § 921. The criteria for entitlement to the presumption have been promulgated as regulations by the Secretaries of Labor and Health and Human Services.[3]

The Labor Department's regulations implementing the Act create a rebuttable presumption of total disability under section 727.203(a). After ten years of coal mine employment, a miner is presumed to be totally disabled by, or to have died from, pneumoconiosis if one of the five requirements of 20 C.F.R. § 727.203(a)(1)–(5) is satisfied. The first four are based upon objective medical evidence: (1) a chest X-ray, biopsy, or autopsy that establishes the existence of pneumoconiosis; (2) ventilatory studies that establish the presence of a chronic respiratory or pulmonary disease;

(3) blood gas studies that demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood; and (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, that establishes the presence of a totally disabling respiratory or pulmonary impairment. The fifth basis was established specifically to allow a surviving spouse or relative of a deceased miner a means of proving total disability when there is no medical proof:

> (5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.

20 C.F.R. § 727.203(a)(5).

Within the Department of Health and Human Services, the Social Security Administration (SSA) is responsible for implementing another set of regulations concerning black lung benefits. The provision allowing a presumption of disability or death due to pneumoconiosis is found in Part 410, Subpart D of its regulations. The SSA requirements for determining the existence of the disease are quite similar to those criteria found in the Labor regulations. A survivor may establish a claim for benefits under section 410.454 if she can prove the existence of pneumoconiosis by X-ray, biopsy or autopsy; by evidence of fifteen years in "underground coal mine" conditions and of a totally disabling chronic respiratory or pulmonary impairment; or

---

*Office of Workers' Compensation Programs,* —— U.S. ——, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987); *Strike v. Director, Office of Workers' Compensation Programs,* 817 F.2d 395, 397–99 (7th Cir. 1987); *Peabody Coal Co. v. Lowis,* 708 F.2d 266, 267–68 (7th Cir.1983); *Underhill v. Peabody Coal Co.,* 687 F.2d 217, 218–20 (7th Cir.1982).

**3.** The date upon which a claim for black lung benefits is filed determines which federal regulations will govern the review of that claim. The Black Lung Act divides claims into three categories according to the date of filing. Any claim filed on or before June 30, 1973, is a Part B claim, which is administered by the Secretary of Health and Human Services (formerly the

Secretary of Health, Education and Welfare), under the auspices of the Social Security Administration. A claim filed between July 1 and December 31, 1973, is considered a "transition Part B" claim, responsibility for which rests primarily with the Secretary of Labor. The Labor Secretary also administers Part C claims filed on or after January 1, 1974. *See Muncy v. Wolfe Creek Collieries Coal Co., Inc.,* 3 BLR 1–627, 1–630 n. 2 (1981). *See also Cook v. Director, Office of Workers' Compensation Programs,* 816 F.2d 1182, 1184 (7th Cir.1987) (discussing differences between the compensation programs of Parts B and C).

by the same totally disabling impairment but arising out of coal mine employment. 20 C.F.R. § 410.454(a)–(c). Under section 410.454(c) "other relevant evidence" may be used to establish the existence of the totally disabling condition, including a spouse's affidavits:

> (c) *Other relevant evidence.* Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of death due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term "other relevant evidence" includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials. In any event, no claim for benefits under Part B of title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray).

20 C.F.R. § 410.454(c).

Mrs. Collins' claim was properly evaluated by the administrative law judge first under the Labor regulations, section 727.-203(a),[4] and then under the SSA criteria for entitlement to the presumption, section 410.454.[5] The ALJ found that the widow was not entitled to benefits under either provision. However, Mrs. Collins asserts that the ALJ did not adequately consider the non-medical, or lay, testimony presented at the hearing in his evaluation of her claim. Had he properly credited that evidence, contends the claimant, he would have found it sufficient to establish the presumption.

## II

The facts found in this record, as presented at the hearing before the ALJ, are not in dispute.

Born in 1912, William L. Collins began working in a coal mine in 1932. He was employed by the respondent Old Ben Coal Company from 1938 until his death, performing several different jobs at a strip mine. After suffering a heart attack in 1977 or 1978, the miner spent six months recuperating, but returned to work intending to continue until his retirement in September of 1979. However, he re-entered the hospital in February of 1979 with cardiac arrhythmia and died on February 25, 1979 of an acute myocardial infarction.

The only testimony given at the hearing was that of the claimant Mrs. Collins. She stated that she had been married to Mr. Collins since 1936, and described her husband's various jobs at the mine, all of which had been dusty and dirty. Concerning his health, she testified that his respiratory condition was very noticeable for at least ten years: He had horrible coughing spells with choking and spitting, shortness of breath, and exhaustion. Nevertheless, she commented, he insisted upon working despite his condition until his retirement in September of 1979. Mrs. Collins also testified that her husband, prior to his death, had been unable to perform his jobs adequately, and had to be helped by the other miners.

The medical records submitted as exhibits included the results of the clinical tests administered to Mr. Collins on August 24, 1978: two X-rays, a pulmonary function study, and an arterial blood gas study. None of the tests revealed abnormal lung impairment. The miner's death record list-

---

4. The claim presently before this court, filed March 5, 1979, is a Part C claim, and thus is governed by the regulations promulgated by the Secretary of Labor. *See* footnote 3, *supra.*

5. Pursuant to 20 C.F.R. § 727.203(d), if a miner (or his widow) cannot establish entitlement to the presumption under section 727.203(a), the adjudicator must consider entitlement under the provisions of Subpart D of Part 410, the Social Security Administration's requirements (20 C.F.R. §§ 410.101ff) for the presumption. *See Muncy v. Wolfe Creek Collieries Coal Co., Inc.,* 3 BLR 1–627, 1–635 (1981).

ed the primary cause of death as myocardial infarction. Also admitted into evidence were the reports of physicians who had examined and treated the miner. Two doctors filed letters documenting treatment of Mr. Collins for upper respiratory infections. There were four reports sent by Dr. Howard, medical director of the respiratory therapy department of the hospital that treated Mr. Collins. The physician described the miner's complaints and stated that, in his opinion, Mr. Collins did have a chronic respiratory disorder. He reported the results of the physical examination of the miner for black lung purposes on September 15, 1978, and diagnosed arteriosclerotic heart disease and uncontrolled hypertension that were not due to dust exposure in coal mine employment, but were cardiac in origin. When he examined Mr. Collins in the hospital in February of 1979, Dr. Howard diagnosed cardiac arrhythmia, premature ventricular contractions, and a history of hypertension, diabetes, status post back surgery for herniated disc, and obesity. In addition, the physician noted normal breath sounds when testing the miner. Dr. Howard also notified the Department of Labor that the cause of Mr. Collins' death was arteriosclerotic heart disease with a possible acute myocardial infarction.

### III

After reviewing all the evidence in his Decision and Order, the ALJ determined that Mr. Collins, a miner with 45 years of coal mine employment, was eligible for black lung benefits. However, he found that the record established that the claimant was not entitled to a presumption of total disability or death due to pneumoconiosis pursuant to section 727.203(a): (1)

There was no autopsy or biopsy evidence and the X-rays were negative for the disease; (2) the results of the pulmonary function study and of the blood gas study did not indicate the disease; and (3) the doctors' reports did not indicate total disability.

In this case, there are no medical reports indicating that the miner had a totally disabling respiratory or pulmonary condition. Dr. Howard's March 24 letter, Dr. Hitchcock's report, and Dr. Ropp's report all establish that the miner had respiratory problems; however, none of these reports indicate that the miner was totally disabled as a result of these problems.

*Collins v. Old Ben Coal Co.*, No. 81-BLA-2760 (Oct. 8, 1982) (Hillyard). Furthermore, concluded the ALJ, subsection (a)(5) was inapplicable in this case because there was other medical evidence concerning the miner's respiratory condition.

Having determined that the rebuttable presumption was not available under section 727.203(a), the ALJ turned to the alternative method of entitlement found under Part D of Section 410 of the regulations, which requires that Collins be totally disabled due to pneumoconiosis arising out of coal mine employment or that his death was due to the disease. The ALJ tested the evidence of record against the various criteria of section 410. Finding that the test results were negative as to pneumoconiosis, and that there was no evidence that the miner was totally disabled due to his respiratory condition, the judge determined that no requirement was established by the claimant. Furthermore, the claimant was not entitled to the § 410.462 presumption [6]

**6.** § 410.462 *Presumption relating to respirable disease.*

(a) Even though the existence of pneumoconiosis as defined in § 410.110(*o*)(1) is not established as provided in § 410.454(a), if a deceased miner was employed for 10 years or more in the Nation's coal mines and died from a respirable disease, it will be presumed, in the absence of evidence to the contrary, that his death was due to pneumoconiosis arising out of employment in a coal mine.

(b) Death will be found due to a respirable disease when death is medically ascribed to a chronic dust disease, or to another chronic disease of the lung. Death will not be found due to a respirable disease where the disease reported does not suggest a reasonable possibility that death was due to pneumoconiosis. Where the evidence establishes that a deceased miner suffered from pneumoconiosis or a respirable disease and death may have been due to multiple causes, death will be found due to pneumoconiosis if it is not medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death.

because there was no showing that the miner died from a respirable disease.

The ALJ concluded, "Because pneumoconiosis has not been established under the § 727 or § 410 Regulations, the Claimant is not entitled to benefits."

The Benefits Review Board upheld the ALJ's denial of benefits. Focusing on the regulations that permit consideration of non-medical evidence, it found that the claimant could not invoke section 727.-203(a)(5) because medical evidence *was* available. The Board acknowledged that the ALJ "improperly failed to discuss the lay evidence when considering eligibility under 20 C.F.R. Part 410 Subpart D." However, the panel called it an "oversight" which "constitutes harmless error." Reviewing the medical evidence in the record, it noted that the two letters referring to respiratory problems did not mention their cause or degree of respiratory impairment, and pointed out the physician's report specifically stating that the miner's condition was cardiac in nature and did not arise out of coal mine employment. Therefore, the Board concluded that the "medical evidence, even in conjunction with the lay evidence, is insufficient to establish the existence of a totally disabling respiratory impairment arising out of coal mine employment," and held "that the administrative law judge's failure to discuss lay evidence at Part 410 constitutes harmless error."

Petitioner urges us to overturn the Board's determination. She contends that her husband had both heart disease and a chronic respiratory condition. Because he died of a heart attack, she believes that the medical reports emphasized the disabling nature of that condition and did not report that his respiratory ailment was totally disabling. Nevertheless, Mrs. Collins asserts that her own testimony before the ALJ established her deceased husband's disability due to his respiratory condition. She thus claims that the ALJ erred in not considering adequately the non-medical evidence before him when making his determination.

## IV

Although this appeal comes to us from a decision of the Benefits Review Board, our task is to review the judgment of the ALJ, which was upheld by the Board. *Dotson v. Peabody Coal Company*, 846 F.2d 1134, 1137 (7th Cir.1988). This court's appellate review is limited to an evaluation of whether the ALJ's and the Board's decisions are rational, supported by substantial evidence, and consistent with the applicable law. *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 691 (7th Cir.1987); *Dempsey v. Director, Office of Workers' Compensation Programs*, 811 F.2d 1154, 1158 (7th Cir.1987). We are obliged to review the entire record; however, we may not decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the ALJ. *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir.1987).

> Our cases establish that as a general rule the ALJ must consider all relevant medical evidence, cannot substitute his expertise for that of a qualified physician, and, absent countervailing clinical evidence or a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician. *See Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 362–363 (7th Cir.1985); *Peabody Coal Co. v. Lowis*, 708 F.2d 266, 275–76 (7th Cir.1983); *Underhill v. Peabody Coal Co.*, 687 F.2d 217, 222–223 (7th Cir.1982); *Peabody Coal Co. v. Director, OWCP*, 581 F.2d 121, 124 (7th Cir.1978) (per curiam).

*Wetherill v. Director, Office of Workers' Compensation Programs*, 812 F.2d 376, 382 (7th Cir.1987).

To the extent that we must interpret statutory and regulatory language, our review is a matter of law and requires a *de novo* review on our part. *Director, Office of Workers' Compensation Programs v. Ball*, 826 F.2d 603, 604 (7th Cir.1987). Nevertheless, we must temper that general mandate of plenary review by according deference to the agency's legal interpretations of its own regulation "unless [the interpretation] is plainly erroneous or inconsistent with the regulation." *Id. See*

*Mullins Coal Co. v. Director, Office of Workers' Compensation Programs,* — U.S. —, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987).

The Benefits Review Board, sitting as an appellate panel in review of the ALJ's decision, has the same scope of review: It must uphold the decision of an ALJ if it is rational, supported by substantial evidence, and in accord with law. *Wetherill,* 812 F.2d at 380. This standard has been established under the statute. *See* 30 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a).

V

To decide first whether the ALJ erred by not adequately considering the widow's lay evidence, we need to unravel the intricate, some might say convoluted, interweaving of the statutory and regulatory provisions concerning black lung benefits.

The Act mandates that "all relevant evidence shall be considered" in determining the validity of claims, including evidence submitted by the wife's affidavits. 30 U.S.C. § 923(b). However, the statute continues, "Where there is no medical or other relevant evidence in the case of a deceased miner, such affidavits ... shall be considered to be sufficient to establish that the miner was totally disabled due to pneumo-

coniosis or that his or her death was due to pneumoconiosis." [7]

The Labor Department's section 727 regulations allow the interim presumption to be established by affidavit when the miner is deceased and no medical evidence is available, 20 C.F.R. § 727.203(a)(5), but do not mention the admissibility of lay evidence to satisfy the presumption when there is medical evidence in the record. We note that Congress has required that the Labor Department's standards "shall not be more restrictive than the criteria" set forth in the Social Security regulations. *See* 20 C.F.R. § 718.1(b). We further point out that the SSA interim presumption explicitly permits the introduction of relevant lay evidence to demonstrate the existence of pneumoconiosis. *See* 20 C.F.R. §§ 410.-414(c), 410.454(c). Thus we must first consider whether section 727.203(a) is actually more restrictive than sections 410.414 and 410.454 and therefore violative of section 923(b).

The answer comes straight out of the section 727 regulations; subsection (c) applies the provisions of Part 718 to the adjudication of section 727.203 claims. 20 C.F.R. § 727.203(c). Section 718.206 admits statements and opinions of individuals "about the existence, cause, and extent of a miner's disability, or the cause of a miner's death." It further provides: "If properly submitted, such evidence shall be con-

---

7.  The pertinent part of 30 U.S.C. § 923(b) states:
    In carrying out the provisions of this part, the Secretary shall ... utilize the personnel and procedures he uses in determining entitlement to disability insurance benefit payments under section 223 of the Social Security Act [42 U.S.C.A. § 423], but no claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram. In determining the validity of claims under this part, *all relevant evidence* shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or *his wife's affidavits,* and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials. *Where there is no medical or other relevant evidence* in the case of a deceased miner, such affidavits,

from persons not eligible for benefits in such case with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981, shall be considered to be sufficient to establish that the miner was totally disabled due to pneumoconiosis or that his or her death was due to pneumoconiosis. In any case ... in which there is other evidence that a miner has a pulmonary or respiratory impairment, the Secretary shall accept a board certified or board eligible radiologist's interpretation of a chest roentgenogram which is of a quality sufficient to demonstrate the presence of pneumoconiosis submitted in support of a claim for benefits under this subchapter if such roentgenogram has been taken by a radiologist or qualified technician, except where the Secretary has reason to believe that the claim has been fraudulently represented.... (emphasis added).
Section 923(b) has been made applicable to Part C adjudications through 30 U.S.C. § 902(f)(2).

sidered and given the weight to which it is entitled as evidence under all the facts before the adjudication officer in the claim." 20 C.F.R. § 718.206. By appending this provision to the Labor interim presumption, the regulation is not more restrictive than the SSA requirements and complies fully with section 923(b) of the Act.

The Supreme Court recently analyzed the Labor Department's interim presumption, section 727.203(a)(1) through (4), in *Mullins Coal Co. v. Director, Office of Workers' Compensation Programs,* — U.S. —, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987). It found the provision harmonious with the Act: "[I]t is clear that the regulation [20 C.F.R. § 727.203] is consistent with [the § 923(b)] requirement [that 'all relevant evidence' shall be considered]." 108 S.Ct. at 430. It also declared that the Labor interim presumption "is substantially similar to the SSA interim presumption" and "satisfies Congress' demand that Labor's criteria 'shall not be more restrictive than the ... SSA's interim presumption.'" 108 S.Ct. at 437. Those findings are no less true when the presumption is viewed in its entirety, inclusive of the (a)(5) death benefit subsection: Section 727.203 is consistent with both the black lung statute and with the SSA regulations.

Once it is recognized that properly submitted lay evidence must be considered when a claim is evaluated under section 727.203, it becomes clear that (a)(5) is not meant to limit the admissibility of affidavits and lay testimony only to those circumstances in which no medical evidence is available. Rather, that subsection intends that an affidavit demonstrating the presence of a totally disabling respiratory or pulmonary impairment in the deceased miner will be sufficient to establish the presumption only "when no medical evidence

exists on the issue of disability." *Dempsey v. Director, Office of Workers' Compensation Programs,* 811 F.2d 1154, 1160 (7th Cir.1987).

In *Dempsey,* we recognized the intent of Congress, when reforming the Black Lung Act in 1977, to protect survivors "who, because of the absence of any relevant medical evidence regarding the physical condition of deceased miners, cannot establish the validity of an otherwise valid claim." 811 F.2d at 1159, quoting H.R. Rep. No. 151, 95th Cong., 1st Sess. 19–20 (1977), 1978 U.S.Code Cong. & Admin. News 237, 255–256. The Senate Report specifically allowed affidavits to be considered along with other evidence, but stated that they may conclusively validate the claim of a widow if they are the *only* evidence.

> Existing law provides that affidavits may be used, along with other evidence to substantiate a claim for benefits.... [I]n the case of a *deceased* miner, a widow's affidavit may be used by itself to establish the presumption. Further, it is implicit that since affidavits are "relevant evidence" under Section 413(b), and all relevant evidence shall be considered in determining a claim's validity, where affidavits are the *only* evidence, that evidence may be sufficient to establish a claim....

*Id.,* quoting S.Rep. No. 209, 95th Cong., 1st Sess. 12 (1977) (emphasis in original).

Both the clear language in the labor regulations and the underlying congressional intent cause us to conclude that, when evaluating a section 727 claim brought by a miner or survivor, an ALJ must consider properly submitted lay evidence concerning the existence, cause and extent of the miner's disability and the cause of his death, and must give it "the weight to which it is entitled." [8] 20 C.F.R. § 718.206.

---

**8.** One distinction must be noted between our holding in this case and our *Dempsey* decision. This court now finds that, under the section 727.203 presumption, properly admitted lay evidence must be considered and given due weight because of the mandate of section 718.206, which is incorporated into the presumption criteria pursuant to section 727.203(c). However,

the *Dempsey* court, in dictum, read section 727.-203(a)(5) "as enabling a claimant who does not have medical evidence sufficient to invoke the interim presumption under subsections (a)(1)–(a)(4) to rely on affidavits to establish entitlement." 811 F.2d at 1160. Despite the difference in our sources for justifying the admission of non-medical evidence, our conclusion is the

Turning to the record before us, we find that the ALJ adequately considered Mrs. Collins' testimony. The widow was the only witness to testify at the administrative hearing, which lasted almost an hour. Her attorney elicited the evidence from her that he felt should be in the record, and submitted additional documentation for the judge's consideration. The judge asked Mrs. Collins some questions as well. As part of his Decision and Order, the ALJ summarized the widow's testimony in the Findings of Fact. He mentioned her descriptions of her husband's employment history and his different jobs at the strip mine. He quoted her testimony that "[h]e would be so black you could hardly see the color of his skin." He also recorded her statements concerning Mr. Collins' heart attack, his being off work for six months, his return to work with the intention of continuing until he was scheduled to retire in September of 1979, and his death in February of 1979.

When the Supreme Court determined in *Mullins Coal Co.* that section 727.203(b) does not require that "all relevant medical evidence" be considered only on rebuttal, it stated: "As long as relevant evidence will be considered at some point by the ALJ, the demand that the decision be made on the complete record is satisfied." *Mullins Coal Co.*, 108 S.Ct. at 435. Upon review of the complete record herein, we find that the ALJ did make his decision after considering both medical and lay evidence, as is reflected from the transcript of the hearing and the factual findings of his Opinion. Although it is certainly preferable that an ALJ's conclusions contain an analysis of the lay evidence and the weight accorded it, we agree with the Benefits Review Board that the omission of such written conclusions was harmless error, particularly in light of the lack of medical evidence of total disability or death due to pneumoconiosis.

We believe that the judge simply reported the essence of Mrs. Collins' testimony without discussion, along with the results of the medical tests and physicians' opinions, because none of the evidence before him was conflicting. Relevant, competent medical evidence concerning each criterion of section 727.203(a)(1)–(4) was submitted and was not challenged by the claimant. The clinical tests were consistently non-qualifying. The death certificate reported cardiac arrhythmia as the cause of death; no respiratory impairment was listed as a secondary cause, and no autopsy evidence was taken to validate that possibility. Nor did the physicians' reports contradict one another. Although there were diagnoses of upper respiratory infections and even of a chronic respiratory disorder, there was no evidence of total disability. The test results were recent; furthermore, the same physician attending Mr. Collins in the hospital before his death had earlier given the miner his physical examination and tests for black lung purposes, and would have known to examine him specifically for pneumoconiosis. Four reports were admitted in evidence by that doctor, and not one referred to Mr. Collins' total disability from a respiratory condition. The ALJ did not discredit or question any of the evidence, medical or lay, before him.

This court has made clear that both medical and lay evidence should be viewed jointly when the medical evidence is conflicting. *See Smith v. Director, O.W.C.P.*, 843 F.2d 1053 (7th Cir.1988).[9] We have also recognized that clinical tests used to detect pulmonary impairments may be fallible, and thus that, absent definitive medical conclu-

same: "[I]n the case of a deceased miner, affidavits must be considered where the other relevant evidence is insufficient to establish entitlement, and may suffice, in themselves, to establish entitlement *where there is no other relevant evidence*." 811 F.2d at 1159 (dictum) (emphasis supplied).

9. In *Smith v. Director*, 843 F.2d 1053 (7th Cir. 1988), the majority upheld the ALJ's decision that the medical evidence therein was sufficient-ly discredited, and the lay evidence sufficiently credible to grant survivor's benefits. Although there is a strongly worded dissent in that case, challenging the ALJ's competence in performing his fact-finding role, both the majority and the dissent agree that medical and lay evidence should be considered together in determining the cause of a miner's disability or death. *See* 843 F.2d at 1055 n. 5, 1058 n. 10, 1059.

sions, there is a clear need to resolve doubts in favor of a disabled miner or his survivor. *See* S.Rep. No. 743, 92d Cong., 2d Sess. 11 (1972), *reprinted in* 1972 U.S. Code Cong. & Admin.News 2305, 2315; *Old Ben Coal Co. v. Luker*, 826 F.2d at 692; *Ware v. Director, O.W.C.P.*, 814 F.2d 514, 517 (8th Cir.1987); *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 593 (7th Cir.1985) (Cudahy, J., concurring). But in the case before us, the tests were not challenged and the medical evidence was not conflicting. In this circumstance, we find that the judge's summary presentation of the lay testimony along with the medical evidence in the Findings of Fact was sufficient indication of his consideration of all the relevant evidence in the record.

The test results in this case were made within the last six months of Mr. Collins' life and did not indicate pneumoconiosis. The "reasoned medical judgements" found in the physicians' reports were not weighed against one another by the ALJ because he did not find their documented opinions conflicting: "Dr. Howard's March 24, 1980 letter (DX 27), Dr. Hitchcock's report (DX 15), and Dr. Ropp's report (DX 18) all establish that the miner had respiratory problems; however, none of these reports indicate that the miner was totally disabled as a result of these problems."

The record before the court reflects extensive evidence of a serious heart condition and of comparably less serious respiratory problems; however, it offers no proof of total disability, either with medical evidence or other relevant evidence that the miner was unable to perform his coal mine work. *See* 20 C.F.R. § 718.204. We agree with the ALJ that the medical evidence overwhelmingly indicates that the miner's death was not caused by pneumoconiosis and that he was not totally disabled by the disease before his death.

Accordingly, we find that the ALJ considered and weighed all the relevant evidence in his determination that the claimant was not entitled to the interim presumption under section 727.203(a). When the record does not contain medical evidence sufficient to invoke the interim presumption under subsections (a)(1)–(a)(4), the claimant may rely on lay evidence to invoke the interim presumption of subsection (a)(5). *Dempsey v. Director*, 811 F.2d 1154, 1160 (7th Cir.1987). The ALJ correctly recognized that the medical evidence in the record was relevant to the issue of disability because it tended to prove or disprove the existence of pneumoconiosis or a debilitating respiratory condition, and properly concluded that subsection (a)(5) was not available to Mrs. Collins. *Dempsey*, 811 F.2d at 1160. *Accord, Coleman v. Director, O.W.C.P.*, 829 F.2d 3, 5 (6th Cir. 1987). The ALJ based his denial of benefits on substantial credible evidence. We affirm that determination. *See Wetherill*, 812 F.2d at 383.

We now turn to the ALJ's decision that the claimant was not entitled to the presumption under the Social Security Administration's Part 410 regulations. Pursuant to those provisions, which are substantially similar to the Labor criteria, a claimant can prove the existence of pneumoconiosis through the results of X-rays, biopsy or autopsy; the results of pulmonary function studies; or other relevant evidence, including lay evidence, demonstrating the existence of a totally disabling respiratory or pulmonary impairment. 20 C.F.R. §§ 410.-414, 410.454.

The SSA regulations, unlike Labor's, offer a specific provision for survivors, 20 C.F.R. § 410.454. Under subsection (c), lay evidence such as a spouse's affidavit must be considered. *Lester v. Weinberger*, 400 F.Supp. 825, 827 (D.Va.1975). When there is no medical evidence, or when the only evidence is a death certificate stating that death was caused by something other than pneumoconiosis, a widow's testimony concerning her husband's physical condition, functional limitations, and employment performance is of great importance, particularly when the miner's death occurred years before. *Dobbins v. Schweiker*, 641 F.2d 1354, 1357 (9th Cir.1981); *Lloyd v. Mathews*, 413 F.Supp. 1161, 1164 (E.D.Pa. 1976); *Lester v. Weinberger*, 400 F.Supp. at 826–27.

Proof of pneumoconiosis can be made by a combination of medical data and lay opinion under section 410.454(c); however, lay testimony may be insufficient when records exist from which dispositive proof can be advanced. *Dobbins*, 641 F.2d at 1357.

The issue of total disability is to be determined from all the facts of the case. 20 C.F.R. § 410.422(c). The two prerequisites for a finding of total disability are a durational (12–month) requirement (section 410.-412(b)(2)) and the miner's inability to work (section 410.412(b)(1)).

When there is medical evidence available, the ALJ has the responsibility of weighing all the relevant evidence to determine whether the claimant has met her burden of proof by a preponderance. If the evidence is not conflicting, no credibility determination needs to be made to discredit certain evidence put forward; the only question is whether the evidence presented is sufficient. *Dobbins*, 641 F.2d at 1356.

Since it appears from the record that the ALJ credited and considered Mrs. Collins' testimony, and since it is his discretion as fact-finder to weigh all relevant evidence in determining whether there is sufficient evidence to invoke the interim presumption, we cannot substitute our judgment for his in that realm. *See* 20 C.F.R. § 410.454(b)(4); *Hamrick v. Schweiker*, 679 F.2d 1078, 1082 (4th Cir.1982); *Poore v. Mathews*, 406 F.Supp. 47, 51 (E.D.Tenn. 1975). We therefore accept his findings because they are supported by substantial evidence.

### Conclusion

The medical evidence introduced before the ALJ consistently demonstrated that Collins neither suffered from pneumoconiosis caused by coal mine employment nor died from the disease. Mrs. Collins' testimony did not establish that her husband was totally disabled by his respiratory or pulmonary impairment. We find that the ALJ properly reviewed the petitioner's claim under both section 727.203 and section 410.454 presumptions, considered all the evidence without substituting his experience for that of a qualified physician, and

based his conclusions on credible evidence. *See Old Ben Coal Co. v. Luker*, 826 F.2d at 692. We hold that the ALJ's decision was rational and supported by substantial evidence. We further hold that the Board's decision to uphold the ALJ's ruling was equally well supported by substantial evidence. Accordingly, we affirm the decision of the Benefits Review Board.

EASTERBROOK, Circuit Judge, concurring.

An applicant for black lung benefits may qualify in one of two ways. The applicant (here, the miner's widow) may establish entitlement to a statutory presumption, throwing on the employer the burden of showing that the employee did not suffer from disabling pneumoconiosis. The miner alternatively may establish by direct evidence that he was disabled by pneumoconiosis; in this endeavor he carries the burden. Applicants understandably prefer to take advantage of the presumption.

Under the Secretary of Labor's regulations, an applicant for black lung benefits activates the presumption of disability by presenting specified kinds of medical evidence deemed "qualifying" under the guidelines. 20 C.F.R. § 727.203(a). Although as a rule only ventilatory, blood gas, or x-ray evidence triggers the presumption, 20 C.F.R. § 727.203(a)(5) says that the presumption arises if

> In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.

"No medical evidence" in this regulation cannot, however, mean exactly what it says. Suppose medical evidence in the record showed that Mr. Collins once had a root canal or was hospitalized after being clobbered by a forklift. Evidence of this sort would be irrelevant to black lung disease and so must be "no medical evidence" for purposes of the regulation. That is to say, "medical" under § 727.203(a)(5) must refer to one of the three kinds of evidence

(x-ray, ventilatory, or blood gas) that could, if "qualifying", give rise to the presumption. Even so, if the only medical evidence were a 10–year–old x-ray film, this would not be sufficient to permit a reasoned evaluation of the claimant's medical condition at the time of death; it would be no different in principle from dental evidence, and under § 727.203(a)(5) the claimant would be allowed to present lay evidence. So much we said in *Dempsey v. Director, OWCP,* 811 F.2d 1154, 1159–60 (7th Cir.1987).

*Dempsey* contains a troubling sentence: that § 727.203(a)(5) "enabl[es] a claimant who does not have medical evidence *sufficient* to invoke the interim presumption under subsections (a)(1)–(a)(4) to rely on [lay] affidavits to establish entitlement." 811 F.2d at 1160 (emphasis added). My colleagues repeat this statement, maj. op. *supra* at 490. This language was dictum in *Dempsey,* is dictum today, and is not right. There is a big difference between evidence "sufficient to permit an evaluation of the claim" and evidence "sufficient to invoke the interim presumption": the latter is a one-way street in claimants' favor, and nothing in § 727.203(a)(5) suggests such a bias. *Dempsey* was concerned that a literal interpretation of § 727.203(a)(5) would put the applicant with just a tiny bit of medical evidence (say, a physician's report that the miner's lungs "sound congested")—evidence useless under subsections (a)(1) to (a)(4) for the purpose of invoking the presumption—at a disadvantage compared with applicants who had no medical evidence. This is a serious concern and a sound reason for treating § 727.203(a)(5) as limited to cases in which the evidence is "medical" (in the sense that it is of the sort that, if "qualifying", supports the presumption) and "sufficient" (in the sense that it is contemporaneous and reasonably complete). It is not a sound reason for holding that § 727.203(a)(5) allows a claimant to add lay evidence whenever the medical evidence, although of the right quality and quantity, is simply negative for pneumoconiosis, and therefore does not support invocation of the presumption.

Under the Secretary's view, if the claimant's file contains, say, two recent x-ray films and a blood gas study, that is medical evidence sufficient to permit an evaluation of the applicability of the presumption. If the evidence is in the claimant's favor, then the presumption arises; if the evidence shows no signs of pneumoconiosis, the presumption does not arise; in either case, lay evidence may not be used *to activate the presumption* and shift the burden to the employer, but may be used directly to show disability caused by pneumoconiosis, a subject on which the claimant has the burden. If, on the other hand, the record contains only the evidence from a general physical exam (not x-rays, ventilatory, or blood gas studies), or evidence too old or too incomplete to be reliable, then lay evidence would be admissible and relevant. Because the Secretary's reading is reasonable, we are obliged to accept it. *Director, OWCP v. Ball,* 826 F.2d 603, 604 (7th Cir.1987); *Ensinger v. Director, OWCP,* 833 F.2d 678 (7th Cir.1987); *Director, OWCP v. Midland Coal Co.,* 855 F.2d 509, 512 (7th Cir. 1988). See also *Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408, 411 (7th Cir.1987).

*Dempsey* did not discuss the Secretary's interpretation of his own regulation. The language I have quoted from *Dempsey* was not essential to the court's judgment—indeed, none of the discussion of § 727.203(a)(5) was essential to the judgment or even influential—because the court went on to hold that even taking the lay testimony for all it could be worth, the record lacked substantial evidence of disabling pneumoconiosis. 811 F.2d at 1161–63. *Dempsey's* treatment of § 727.203(a)(5) does not mention the difference between medical evidence "sufficient to invoke the presumption" and evidence "sufficient to permit an evaluation of the miner's medical condition at the time of death". The parties to this case filed supplemental briefs at our request to discuss the problem in light of *Dempsey,* and we should give the problem the attention it requires instead of repeating dictum from an opinion that did not discuss the point. The scope for lay evidence in § 727.203(a)(5) is supposed to be narrow—

if not, the difference between proving the case directly and proving enough to set up the interim presumption collapses. Unlimited use of lay evidence enables the claimant to obtain the benefit of the presumption (and shift a heavy burden to the employer) without any of the kinds of medical evidence that justify burden shifting. The Secretary's position distinguishes the presumption from the direct method of proof in a permissible way.

One additional regulation requires comment. The court's opinion refers to 20 C.F.R. § 718.206, which says:

> Decisions, statements, reports, opinions, or the like, of agencies, organizations, physicians or other individuals, about the existence, cause, and extent of a miner's disability, or the cause of a miner's death, are admissible. If properly submitted, such evidence shall be considered and given the weight to which it is entitled as evidence under all the facts before the adjudication officer in the claim.

The first sentence of § 718.206 simply abolishes the hearsay rule for medical and similar reports, like the Social Security statute and regulations sustained in *Richardson v. Perales*, 402 U.S. 389, 399–408, 91 S.Ct. 1420, 1426–31, 28 L.Ed.2d 842 (1971), without attributing any particular consequence to evidence. The second sentence makes this clear: the evidence shall be given "the weight to which it is entitled" under substantive law. Section 727.-203(a)(5) establishes the "weight to which [lay evidence] is entitled" with respect to the interim presumption—none, if there is medical evidence sufficient to permit a reasoned assessment of the claimant's condition. The lay evidence is relevant if the claimant seeks to prove her case without resort to the presumption, or if she seeks to fend off the employer's effort to overcome the presumption; it is not properly used to activate the presumption except under the terms laid down in § 727.203(a)(5).

Things would be otherwise if § 727.203(a)(5) were inconsistent with the statute. One requirement, 30 U.S.C. § 902(f)(2), says that the regulations of the Secretary of Labor "shall be no more restrictive" than the regulations applicable to claims filed before June 30, 1973, with the Secretary of Health and Human Services. These regulations implement a presumption of disability without the evidentiary limits of § 727.203(a)(5). See 20 C.F.R. §§ 410.414, 410.454. We concluded in *Strike v. Director, OWCP*, 817 F.2d 395 (7th Cir.1987), that the language of § 902(f)(2) refers to substantive but not evidentiary rules of eligibility. See also *Taylor v. Peabody Coal Co.*, 838 F.2d 227 (7th Cir.1988). The Supreme Court has granted certiorari in a case that presents the question whether *Strike* was correctly decided, see *Pittston Coal Group v. Sebben*, —— U.S. ——, 108 S.Ct. 1011, 98 L.Ed. 2d 977 (1988). If *Strike* is right, § 727.203(a)(5), as an evidentiary rule only, comports with § 902(f)(2).

The statute also provides that "all relevant evidence shall be considered", 30 U.S. C. § 923(b). The Supreme Court said in *Mullins Coal Co. v. Director, OWCP*, —— U.S. ——, 108 S.Ct. 427, 430, 98 L.Ed.2d 450 (1987), that the Secretary's regulations comply with this all-relevant-evidence requirement. Section 923(b) does not specify what evidence is relevant, though. Section 727.203(a)(5) tells us that lay evidence is not relevant for a particular purpose (activating the presumption), even though it is relevant if the claimant seeks to prove her case directly to undercut the employer's defense. The regulation is consistent with the statute and must be respected—unless this circuit *Strikes* out.